JUAN A. QUEVEDO SEGARRA, peticionario y recurrido, *v.* JUNTA DE APELACIONES SOBRE CONSTRUCCIONES Y LOTIFICACIONES, demandada y recurrente; JUNTA DE PLANIFICACIÓN DE PUERTO RICO, interventora y recurrente.

*Número*: O-72-157     *Resuelto*: 15 de marzo de 1974

*Waldo Santiago Irizarry,* abogado de la demandada-recurrente; *Santos P. Amadeo,* abogado del peticionario-recurrido; *Marcos A. Rodríguez Estrada, Rafael Vega Figueroa* y *Gregui J. Mercado Escobar,* abogados de la interventora Junta de Planificación de Puerto Rico.

EL JUEZ ASOCIADO SEÑOR TORRES RIGUAL emitió la opinión del Tribunal.

Se plantea en este caso una controversia de carácter jurisdiccional entre la Junta de Apelaciones sobre Construcciones y Lotificaciones y la Junta de Planificación con respecto a cual de los dos organismos compete entender en primera instancia en las solicitudes para la concesión de variaciones o la autorización de excepciones. La Junta de Planificación reclama para sí esta facultad asumiendo la posición contraria la Junta de Apelaciones.

El conflicto jurisdiccional surgió con motivo de haber aprobado la Junta de Planificación la ubicación y construcción de una estación de gasolina en un distrito industrial I-1 propuesta por el señor Juan A. Quevedo Segarra. El proyecto había sido denegado en dos ocasiones anteriores, confirmando la Junta de Apelaciones ambas denegatorias. En reconsideración solicitada por Quevedo, la Junta de Planificación aprobó finalmente el proyecto. Apelaron los opositores y la Junta de Apelaciones revocó la aprobación por el fundamento de que la Junta de Planificación no tenía facultad para reconsiderar una resolución denegatoria que tenía el carácter de final y firme. El tribunal de instancia revocó, a su vez, a la Junta de Apelaciones y ordenó que se devolvieran los autos a dicho organismo.

La Junta de Apelaciones interpretó que el propósito de la devolución de los autos fue el de que se celebrara una vista. Solicitó reconsideración al tribunal de instancia y, por primera vez, planteó el conflicto jurisdiccional aduciendo que no procedía la vista ante ella por no habérsele presentado una solicitud directa, ni que tampoco procedía la celebración de una vista ante la Junta de Planificación por no tener ésta facultad estatutaria para entender en solicitudes relacionadas con estaciones de gasolina.

El tribunal de instancia denegó de plano la reconsideración solicitada sin entrar en el conflicto jurisdiccional. Se

paralizó el trámite del caso en la Junta de Apelaciones al negarse ésta a celebrar la vista y disponer sobre los méritos de la revisión instada ante ella por los opositores del proyecto. En un esfuerzo por acelerar el trámite, Quevedo solicitó al tribunal de instancia que ordenara a dicho organismo el traslado de los autos a la Junta de Planificación, cuyo foro le había sido favorable. La Junta de Apelaciones volvió a levantar el conflicto jurisdiccional arguyendo que en ella residía la facultad para entender en solicitudes relacionadas con la ubicación y construcción de estaciones de gasolina por ser el uso en cuestión uno permitido en los distritos comerciales e industriales a manera de excepción, de acuerdo con las disposiciones contenidas en el Reglamento de Zonificación.

En esta ocasión el tribunal de instancia resolvió el conflicto jurisdiccional concluyendo que la facultad de la Junta de Apelaciones era una de revisión, por lo que dicho organismo no tenía jurisdicción en primera instancia para entender en la solicitud de Quevedo. No obstante, devolvió los autos a la Junta de Planificación, en vez de devolverlos a la Junta de Apelaciones para que ésta considerara los méritos de la revisión solicitada por los opositores al proyecto, ya que su resolución revocando la aprobación del mismo no fue en los méritos, sino por el fundamento de que la Junta de Planificación no tenía facultad para reconsiderar una resolución que era final y firme. La devolución de los autos a la Junta de Planificación no fue consistente, pues, con la propia decisión del tribunal.

La contención de la recurrente es al efecto de que las disposiciones del Reglamento de Zonificación vigente, Arts. 53.01–54.05, 23 R.&R.P.R. secs. 9–1101 a 9–1115, confiriéndole jurisdicción en primera instancia a la Junta de Planificación en los casos de variaciones y excepciones no son válidas por estar en conflicto con la Ley Núm. 95 de 30 de junio de 1959. Arguye que esta ley, al crear la nueva Junta de Apelaciones, le confirió las mismas facultades que tenía la Junta

originalmente creada por la Ley Núm. 213 de 12 de mayo de 1942; y, que de acuerdo con *López v. Junta Planificación,* 80 D.P.R. 646 (1958), la mencionada Ley Núm. 213 concedió directamente a la Junta de Apelaciones el poder de otorgar variaciones y excepciones.

No es correcto. El estudio que hemos hecho de la cuestión demuestra que nunca se ha conferido directamente a la Junta de Apelaciones jurisdicción en primera instancia para otorgar variaciones y excepciones. Pero, más aún, la naturaleza y alcance de estos conceptos dentro del régimen establecido por la Ley de Planificación y el Reglamento de Zonificación para controlar y dirigir el desarrollo urbano en forma integral con un mínimo de fricción y de conflicto, demuestran que propiamente corresponde a la Junta de Planificación entender en primera instancia en la concesión de variaciones y excepciones.

Veamos la función que desempeñan estos conceptos y la importancia que tienen para una administración eficaz de las normas de zonificación.

En *López v. Junta Planificación,* 80 D.P.R. 646–654, (1958), definimos el término "variación" como el permiso para dedicar la propiedad a un uso prohibido por las restricciones impuestas en una zona o distrito, y, las excepciones, como la autorización para usar la propiedad en cierto modo que de antemano el propio Reglamento de Zonificación admite y tolera, siempre que se cumpla con ciertas condiciones.

Los reglamentos de zonificación son de carácter general y no es posible que prevean los casos especiales de perjuicios. Generalmente, el Reglamento de Zonificación establece diferentes distritos de uso aplicando a cada uno de ellos diferentes restricciones con respecto a la densidad poblacional, área de ocupación, alturas de edificios, patios delanteros y laterales, entre otras restricciones. La experiencia demuestra que la

aplicación del Reglamento de Zonificación a casos concretos requiere muchas veces ajustes y modificaciones para evitar injusticias. Hay solares de forma irregular o topografía desigual que impide cumplir con las restricciones impuestas en el distrito en que ubica, o que una parte cae en un distrito y el resto del solar en otro. La aplicación rigurosa a estos casos especiales puede resultar onerosa causando perjuicios al dueño de dicho solar sin que, por otro lado, haya beneficio alguno para la comunidad.

■ La variación tiene el propósito de atenuar en estos casos el rigor del Reglamento, permitiendo el uso prohibido cuando se demuestra que debido a las circunstancias especiales la aplicación de las restricciones puede resultar irrazonable y ocasionar perjuicios al dueño.

■ El Reglamento de Zonificación establece los criterios para la concesión de variaciones, requiriendo para ello: 1) que la aplicación literal del Reglamento resulte en una restricción irrazonable del disfrute de una pertenencia, 2) que se demuestre que la concesión aliviará un perjuicio claramente demostrable, 3) que la concesión ha de redundar en los mejores intereses de la comunidad. Art. 53.07, 23 R.&R.P.R. sec. 9–1101.

■ La concesión de excepciones, por otro lado, es un medio para controlar ciertos usos que no son frecuentes pero que pueden tener un efecto adverso en el vecindario, tales como cementerios, aeropuertos, hospitales, funerarias, desarrollos turísticos y, como en el caso de autos, estaciones de gasolina. Se conceden únicamente en los casos expresamente autorizados por el Reglamento y siempre sujeto a las condiciones en él prescritas.

■ Los factores de circunstancias especiales y perjuicios, esenciales para la concesión de variaciones, no son aplicables a las excepciones, pues lo importante en la concesión de éstas es restringir y controlar ciertos usos que pueden resultar

adversos al carácter del vecindario, aunque no necesariamente incompatibles. Reps, John W.: *Discretionary Powers of the Board of Zoning Appeals*, 20 Law & Contemp. Prob. 280, 289. Por eso, tiene primacía en la concesión el interés público y el interés del vecindario en particular sobre el interés del dueño del terreno. Yokley: 2 *Zoning Law & Practice* 123 (3rd. Ed.).

■ Las excepciones están previstas en el Reglamento de Zonificación, el cual autoriza usos específicos y prescribe los siguientes criterios: 1) que se consideren los fines y propósitos generales del Reglamento de Zonificación, 2) que se proteja la salud, la seguridad y el bienestar de los ocupantes de la propiedad a ocuparse o de las propiedades limítrofes, 3) que no se menoscabe el suministro de luz y aire a la propiedad a usarse o a las vecinas, 4) ó se aumente el peligro de fuego, 5) ó se ocasiones reducción o perjuicios a los valores de las propiedades establecidas en las áreas vecinas. Sec. 54.03, 23 R.&R. P.R. sec. 9–1113. Estos criterios son similares a los apuntados en *López* v. *Junta Planificación*, supra, a la pág. 663.

El Reglamento de Zonificación requiere para los proyectos de estaciones de gasolina, como en el caso de autos, un estudio de viabilidad que tome en consideración: 1) los incrementos en densidad poblacional y en el tránsito vehicular en el sector en que se proyecta ubicar la estación, 2) valor de los terrenos, 3) el impacto que puede tener sobre otras estaciones de gasolina existentes o previamente autorizadas. Sec. 27.15 según enmendada el 21 de abril de 1971.

■ Como puede verse, las variaciones y excepciones cumplen la importante función de brindar la flexibilidad necesaria en la aplicación del Reglamento de Zonificación para preservar su utilidad como instrumento de ajuste de los intereses en conflicto entre el dueño del terreno de usarlo en la forma que él considere más conveniente y el interés del público en controlar el uso de la tierra y promover un desarrollo urbano integral, racional y ordenado. Son ellas una parte indispen-

sable en el proceso integral de controlar los usos de la tierra en beneficio del bienestar general.

En la concesión de variaciones y excepciones entran en juego factores técnicos y complejos, cuya evaluación requiere estudios y conocimientos especializados. Como bien se señala en el alegato de la recurrida, la Junta de Planificación cuenta con el personal profesional y los recursos técnicos necesarios para llevar a cabo esta evaluación. Es de notar la tajante diferencia en los recursos presupuestarios y de personal entre ambos organismos. La Junta de Planificación cuenta con un presupuesto conjunto de $11,605,075, mientras que el presupuesto de la Junta de Apelaciones asciende a $267,353. *Presupuesto 1973*, págs. 210 y 184. La Junta de Planificación cuenta con más de 150 ingenieros, 57 técnicos de planificación, 6 planificadores regionales, 16 planificadores de renovación urbana, 9 especialistas de planificación, 3 agrimensores y un agrónomo.

El personal técnico de la Junta de Apelaciones se limita a tres ingenieros y un agrimensor. Relación de Puestos Regulares, *Presupuesto de 1973*, pág. 165.

Por otro lado, la Junta de Planificación lleva a cabo estudios sobre el crecimiento poblacional y urbano, y de otra índole, a fin de reglamentar el uso de terrenos y promover un desarrollo urbano ordenado. *Presupuesto, 1973*, pág. 210. En virtud de los recursos a su disposición y de los estudios que lleva a cabo, la Junta de Planificación tiene una perspectiva integral y abarcadora de la problemática urbana que le permite entender con mayor efectividad en casos de variaciones y excepciones en primera instancia.

Es significativo el hecho de que la Junta de Planificación viene desempeñando esta función desde el 1951 hasta que se suscitó el presente caso. La propia Junta de Apelaciones así lo reconoció en su Informe Anual correspondiente al año 1972, en el cual expresó:

"La situación, hasta que fue emitida esta decisión [refiriéndose a su propia decisión en el caso de *José Firpi y otros* v. *Junta de Planificación,* Núm. 71-026ac] en el mes de junio de 1971, era de que los casos de excepciones se ventilaran ante la Junta de Planificación, y era en el nivel apelativo que intervendríamos si se acudía ante nosotros."

■ Como se sabe, la interpretación administrativa de un estatuto por aquellos organismos encargados de ponerlos en vigor y velar porque sus fines se cumplan nos merece un gran peso. *Román* v. *Superintendente de la Policía,* 93 D.P.R. 685 (1966).

En adición a todo lo dicho, el texto usado por el propio legislador en las leyes pertinentes y el historial legislativo de dichas leyes fortalecen la interpretación de que corresponde a la Junta de Planificación la facultad de conceder variaciones y excepciones en primera instancia. Veamos.

■ La Ley Núm. 213 del 1942, 23 L.P.R.A. secs. 1–59, creó el primer organismo de revisión administrativa con el nombre de Junta de Apelaciones de Planificación, Urbanización y Zonificación, estableciendo un procedimiento de revisión muy similar al de la presente Junta de Apelaciones sobre Construcción y Lotificaciones. (¹)

---

(¹) El Art. 26 de la citada Ley Núm. 213 leía como sigue:

"Cualquier parte interesada en la expedición o denegación de un permiso de construcción, sanitario o de uso de terrenos o edificios, podrá presentar copias certificadas de cualquiera de dichas decisiones o actuaciones del funcionario expedidor de los permisos, dentro del término de quince (15) días después de hecha de la notificación para una vista pública y para la apelación y revisión de dicha decisión o actuación por la Junta de Apelaciones de Planificación, Urbanización y Zonificación cuya resolución se dictará dentro de las tres (3) semanas siguientes. La Junta de Apelaciones de Planificación, Urbanización y Zonificación, en la vista de apelaciones que se celebren de acuerdo con este artículo, podrá decretar cualquier orden, requerimiento, resolución o determinación que a su juicio deba dictarse por motivo de perjuicios ocasionados por circunstancias especiales, por denegaciones viciosas para emitir los permisos necesarios, o por cualesquiera otras razones autorizadas por reglamentaciones de la Junta según se provee en esta Ley, y a tal fin, la Junta tendrá los mismos poderes del funcionario de cuya sentencia se apela." Leyes de Puerto Rico sec. 26, pág. 1133 (1942).

Al amparo de esta ley la Junta de Planificación adoptó en el 1946 el Reglamento de Zonificación Núm. 4, *Boletín Administrativo Núm. 986*, Secretaría Ejecutiva. Dicho Reglamento autorizó a la Junta de Apelaciones a conceder directamente variaciones fijando los criterios que limitaban el ejercicio de discreción. La Junta de Planificación no intervenía, entonces, en la concesión de variaciones. El Reglamento, sin embargo, le reservó la facultad de entender en primera instancia en los casos de excepciones, salvo en algunos casos específicos en que también delegó a la Junta de Apelaciones la facultad de entender en primera instancia. (²) Para esa época el Negociado de Permisos estaba adscrito al entonces Departamento del Interior, y, al igual que hoy, las funciones del Oficial de Permisos eran de carácter ministerial. *López* v. *Junta Planificación*, 80 D.P.R. 646.

En un esfuerzo por integrar y simplificar este sistema administrativo se aprobó en el 1950 el Plan de Reorganización Núm. 11, mediante el cual se trasladó el Negociado de Permisos a la Junta de Planificación y se abolió la Junta de Apelaciones transfiriéndose también sus funciones a la Junta de Planificación. Plan de Reorganización Núm. 11, 23 L.P.R.A. sec. 1 (nota). De manera, que a partir de 1950 y hasta que se creó de nuevo en el 1959 la actual Junta de Apelaciones, la función revisora la desempeñaba la propia Junta de Planificación. Estas alteraciones en los mecanismos internos de revisión no afectaron en forma alguna el recurso judicial para revisar las determinaciones de la Junta de Planificación ante el Tribunal Superior. 23 L.P.R.A. sec. 28(a).

En el 1959 se enmendó la Ley Núm. 213 de 1942, *supra*, para crear de nuevo la Junta de Apelaciones. Ley Núm. 95 de 30 de junio de 1959, 23 L.P.R.A. sec. 28. Posteriormente se adoptó un nuevo Reglamento de Zonificación en el cual se reservó a la Junta de Planificación la facultad de entender

---

(²) Véase Art. 9 y 10 del Reglamento de Zonificación Núm. 4 del 1946 (Revisado).

en primera instancia, no sólo en los casos de excepciones, como era en la etapa de 1942 al 1950 cuando existía la anterior Junta de Apelaciones, sino también en los casos especiales de variaciones. Véase Tópico 16, Arts. 53.01 a 54.05, R.&R.P.R. *supra*. Son éstas las disposiciones que la recurrente considera inválidas por, alegadamente, estar en conflicto con la mencionada Ley Núm. 95. Cita en su apoyo a *López* v. *Junta Planificación*, supra. Como veremos más adelante no tiene razón.

La Ley Núm. 95 fijó el ámbito jurisdiccional de esta nueva Junta en términos similares a los utilizados por la Ley Núm. 213 de 1942, ([3]) a saber:

"(a) Cualquier parte directamente interesada en la expedición o denegación de un permiso de construcción, sanitario o de uso de terrenos o edificios, o afectada por las actuaciones o resoluciones de la Junta de Planificación de Puerto Rico sobre casos o planos de lotificación simple, *podrá presentar en la Junta de Apelaciones copias certificadas de cualesquiera decisiones o actuaciones del Oficial de Permisos, o de cualquier acuerdo o resolución de la Junta de Planificación de Puerto Rico en la expedición o denegación de un permiso de construcción, sanitario o de uso de terrenos o edificios y sobre casos o planos de lotificaciones simples dentro de* treinta (30) días a partir de la fecha del depósito en el correo de la notificacion de la decisión, resolución o actuación, *para ser revisada por la Junta de Apelaciones*. La Junta de Apelaciones celebrará una vista, con notificación a las partes interesadas, y deberá dictar su resolución dentro de los treinta (30) días siguientes a dicha vista. La Junta de Apelaciónes podrá decretar cualquier orden, requerimiento, resolución o determinación que a su juicio deba dictarse (1) por motivo de perjuicios ocasionados por circunstancias especiales, (2) por denegaciones viciosas para emitir los permisos necesarios, ó (3) por cualesquiera otras razones autorizadas en los reglamentos de la Junta de Planificación de Puerto Rico adoptados a virtud de las secs. 1 a 30 y 81 a 86 de este título; y a tal fin, *la Junta tendrá los mismos poderes del funcionario u orga-*

---

([3]) El texto pertinente de la Ley Núm. 213 aparece en el escolio 1, *supra*.

*nismo de cuya sentencia se apela."* 23 L.P.R.A. sec. 28 (Énfasis suplido.)

Nótese que en términos claros y precisos dicho artículo define la función de la Junta como una de revisión. El procedimiento se inicia con una denegación o expedición de un permiso por el Oficial de Permisos o una actuación o resolución de la Junta de Planificación, debiendo presentarse copias certificadas de las mismas ante la Junta de Apelaciones para ser revisadas. Supone, pues, que haya habido una determinación en primera instancia, bien sea ante la Junta de Planificación o ante el Oficial de Permisos. Dicho artículo confiere a la Junta de Apelaciones los mismos poderes del funcionario u organismo de "cuya sentencia se apela."

■ Nada hay en el texto del Art. 26, ni siquiera por inferencia, que permita a la Junta de Apelaciones ejercer jurisdicción original. Pero si alguna duda hubiere, un breve examen del historial legislativo la disiparía ya que éste ratifica la intención del legislador de conferir a la Junta de Apelaciones una función exclusivamente revisora.

Así el informe de la Comisión de lo Jurídico de la Cámara sobre la Ley Núm. 95 del 30 de junio de 1959 que enmendó el Art. 26 para crear la Junta de Apelaciónes puntualizó esta función revisora:

"El Sustitutivo al P. de la C. 582 tiene el propósito de enmendar las leyes que rigen el funcionamiento de la Junta de Planificación de Puerto Rico a los fines de crear una Junta de Apelaciones sobre Construcciones y Lotificaciones para *revisar* (1) las actuaciones del Oficial de Permisos, en lo concerniente a la expedición o denegación de permisos de construcción, sanitarios o de uso de terrenos y edificios; y (2) las actuaciones y resoluciones de la Junta de Planificación, en los casos de lotificaciones simples.

Actualmente es la propia Junta de Planificación la que revisa las actuaciones y decisiones del Oficial de Permisos, cuya oficina es una dependencia de dicha Junta de Planificación. La Junta de Planificación, además, actualmente revisa sus propias decisio-

nes y actuaciones en los casos de denegaciones o desaprobaciones de propuestas lotificaciones. Vuestra Comisión entiende que no es buen principio de administración pública que un organismo esté autorizado a revisar sus propias actuaciones o las actuaciones de uno de sus organismos dependientes. *Creemos que es mucho más conveniente y saludable que sea un organismo independiente el que revise en apelación las decisiones y actuaciones del Oficial de Permisos, y de la Junta de Planificación en los casos de lotificaciones simples.* Se logra así una revisión enteramente imparcial y se consigue, además, aligerar las labores de la Junta de Planificación, la cual actualmente se halla sobrecargada de trabajo como resultado, de las múltiples cuestiones en que por ley viene obligada a intervenir." *Diario de Sesiones,* Vol. 12, Tomo 3 pág. 1677 (1959). (Énfasis suplido.)

En igual sentido se pronuncia el informe de la Comisión de Gobierno de la Cámara sobre el P. de la C. 582, *Diario de Sesiones,* Vol. 12, Tomo 3, pág. 1677 (1959).

En adición, la propia Ley Núm. 95 de 1959, que creó la Junta de Apelaciones, enmendó el Art. 11 de la Ley del Negociado de Permisos, Ley Núm. 429 de 1946, recalcando, una vez más, la función revisora de la Junta al disponer expresamente que:

"Las decisiones y actuaciones del Oficial de Permisos y las actuaciones, decisiones y resoluciones de la Junta de Planificación de Puerto Rico relacionados con casos o planos de lotificación simple *serán revisados en apelación* por la Junta de Apelaciones." 23 L.P.R.A. sec. 41. (Énfasis suplido.)

El caso de *López* v. *Junta Planificación,* tantas veces citado por la recurrente, no es de aplicación. El punto envuelto en el mismo era si correspondía a la Junta de Planificación entender en primera instancia en los casos de excepciones o era necesario acudir primero al Oficial de Permisos. Se resolvió correctamente que siendo las funciones del Oficial de Permisos puramente ministeriales su única función era denegar el permiso por no estar de acuerdo con el Reglamento, correspondiendo a la Junta de Planificación variar las disposi-

ciones del Reglamento en los casos especiales. Por otro lado, debe recordarse que *López v. Junta Planificación* se refiere a la situación legal que prevalecía después que se abolió la Junta de Apelaciones en el 1950. Independientemente de su inaplicabilidad a los hechos de este caso su fundamento racional es aún válido para sostener la posición contraria a la de la recurrente. Esto es, que la Junta de Planificación es un organismo de facultades discrecionales a diferencia del Oficial de Permisos y que, por lo tanto, hay que acudir a ella en primera instancia para obtener variaciones en la aplicación del Reglamento de Zonificación.

Se dictará sentencia confirmando *la sentencia recurrida y se devuelven los autos a la Junta de Apelaciones para que considere los méritos de la revisión de la resolución de la Junta de Planificación aprobando el proyecto de estación de gasolina en este caso.*

Los Jueces Asociados Señores Cadilla Ginorio, Díaz Cruz e Irizarry Yunqué, no intervienen.