ASOCIACIÓN DE RESIDENTES DE PARK SIDE, INC. y OTROS, demandantes y peticionarios, *v.* JUNTA DE PLANIFICACIÓN y COMPAÑÍA TELEFÓNICA DE PUERTO RICO, demandadas y recurridas.

*Número:* CC-95-35          *Resuelto:* 6 de noviembre de 1995

*Mario J. Pabón, José Manuel de Juan, William Vivoni* y *Manuel Maldonado*, abogados de la parte peticionaria; *Efrén B. Lugo Pérez* e *Yvonne Aguilú*, abogados de la parte recurrida.

PER CURIAM: Un grupo de residentes nos solicita que reconozcamos su derecho a intervenir y exigir vistas públicas en el proceso administrativo mediante el cual se autorizó la construcción de un edificio no residencial dentro del área donde viven los peticionarios. Trabada esta controversia, los residentes, aquí peticionarios, también nos solicitaron que ordenáramos la paralización de la referida obra de edificación, por temor a que se produjeran daños irreparables y se tornara académico este asunto.

La cuestión ante nos se reduce a determinar si el permiso concedido por la Junta de Planificación a la demandada recurrida, Compañía Telefónica de Puerto Rico, debió haber sido precedido por unas vistas públicas. Resolvemos que la Junta de Planificación estaba obligada, por sus pro-

pias reglas, a celebrar unas vistas públicas antes de conceder el permiso de variación en uso de la propiedad en cuestión. Por ello, hasta tanto no se celebren vistas públicas, en torno al nuevo uso propuesto para dicha propiedad, y se adjudiquen los planteamientos de los peticionarios, ésta no podrá utilizarse para fines distintos a los autorizados para la propiedad en cuestión, conforme a la clasificación que ésta tenía antes de que la Junta de Planificación concediera la variación en el uso sin escuchar a los peticionarios.

I

Los demandantes peticionarios son las asociaciones de residentes del Condominio San Patricio I y de la urbanización Park Side, ambos localizados en el barrio Pueblo Viejo de Guaynabo. Esta área es predominantemente residencial, pero a su alrededor inmediato se ha desarrollado un gran flujo de actividad comercial. Esta situación ha ocasionado problemas entre los residentes que desean frenar el desarrollo comercial y a los comerciantes que desean establecerse allí. Véase, e.g., *Metropolitana S.E. v. A.R.Pe.*, 138 D.P.R. 200 (1995).

La Compañía Telefónica de Puerto Rico (en adelante la Telefónica) está situada entre las áreas residenciales donde está el Condominio San Patricio I y la urbanización Park Side y los comercios de la avenida Roosevelt y el Centro Comercial Plaza Caparra. El área, donde está localizada la Telefónica, está subdividida en lotes con diferentes clasificaciones de zona. La Telefónica interesa utilizar dos de esos lotes para el desarrollo de un proyecto institucional que consiste en la construcción de un edificio de cuatro pisos que incluirá, entre diversas facilidades recreativas, un gimnasio, una cancha de baloncesto, una cancha de tenis, un salón de usos múltiples, áreas para barbacoas, una enfermería y varios pisos de estacionamiento, todo ello

para el beneficio de los empleados de la Telefónica. Ambos solares están restringidos por la zonificación de sus respectivas áreas. Uno de los solares está destinado al uso residencial, zonificado bajo la clasificación R-3, mientras que el otro está limitado a ciertas actividades comerciales, con clasificación C-2. Dichos solares estaban siendo usados por la Telefónica como área de estacionamiento.

Para poder proceder con sus planes de construir sobre los referidos solares un edificio destinado a los propósitos antes mencionados, la Telefónica presentó ante la Junta de Planificación (en adelante la Junta) una consulta de ubicación y solicitud de variación el 1ro de julio de 1994, *para que se le eximiese del cumplimiento de los requisitos de zonificación aplicables.*

En cuanto se percataron por su propia cuenta de los referidos planes de la Telefónica, los residentes del Condominio San Patricio I y de la urbanización Park Side solicitaron intervenir en el procedimiento de permisos ante la Junta, y pidieron la celebración de unas vistas públicas. Alegaron, *inter alia,* que ninguno de los residentes de las urbanizaciones y de los condominios, que serían afectados por la edificación en cuestión, habían sido notificados de los planes de la Telefónica; que el área residencial adyacente al propuesto edificio ya sufría graves problemas de congestión de tránsito, y que esos problemas se agravarían con la construcción del edificio, puesto que al dedicarse éste a actividades deportivas y sociales a todas horas del día y todos los días de la semana, aumentaría significativamente el tráfico por la calle residencial que lleva al edificio. El 21 de septiembre de 1994, la Junta denegó ambos requerimientos, a la vez que aprobó la consulta para la ubicación del referido proyecto, por considerarlo una "mejora pública", y accedió a la solicitud de variación en uso de la Telefónica. Posteriormente, la Junta denegó la reconsideración presentada por los peticionarios.

Inmediatamente, los residentes comenzaron el trayecto apelativo que eventualmente los trajo ante nos. Solicitaron revisión en el Tribunal Superior, Sala de San Juan, de la referida decisión de la Junta, alegando que la variación de uso concedida requería una celebración previa de vistas públicas, o que, en la alternativa, consistía de una rezonificación de facto, que también exige vistas públicas. Dicho foro denegó los planteamientos de los peticionarios y confirmó la determinación de la Junta. Éstos, entonces, recurrieron en alzada mediante una petición de *certiorari* ante el Tribunal de Circuito de Apelaciones, que también confirmó la determinación original de la Junta. Finalmente, recurrieron en petición de *certiorari* ante nos, esgrimiendo los mismos argumentos presentados antes, los que transcribimos a continuación:

A.    Erraron los tribunales de instancia y la Junta de Planificación al resolver que el Reglamento Núm. 2 de Planificación permite la rezonificación *de facto* de ciertas propiedades sin la celebración previa de una vista pública, en contravención del artículo 27 de la Ley de Planificación (23 L.P.R.A. sec. 62(z)) y la norma en el derecho administrativo que una agencia no puede exceder en la reglamentación que adopta los poderes que se le han conferido por ley.

B.    Erraron los tribunales de instancia y la Junta al no ordenar la celebración de una vista pública, a tenor con la sección 1.07 del Reglamento Núm. 2 de Planificación y las secciones 1.04, 2.01, 4.06, 4.08, 84.01(2) y 98.04 del Reglamento Núm. 4 de Planificación.

C.    Erraron los tribunales de instancia, al permitir a la Junta actuar de forma arbitraria e inconsistente, y no ordenar que se lleve a cabo un estudio de tránsito, en contravención de lo establecido por nuestro Honorable Tribunal Supremo en el caso de *South Porto Rico Sugar Co. v. Junta*, 82 D.P.R. 847, 865 (1961).

D.    Erró la Honorable Junta al aprobar la consulta de ubicación y solicitud de variación, sin antes decidir sobre la solicitud

de intervención radicada por la Asociación el 12 de septiembre de 1994.

Los demandantes peticionarios presentaron el 1ro de agosto de 1995 una Moción Urgente Solicitando Orden Provisional en Auxilio de Jurisdicción, en la cual nos pidieron que paralizáramos la obra en cuestión mientras se dilucidaba su solicitud de *certiorari*. Atendida dicha moción, concedimos a la parte recurrida un término de diez (10) días para que mostrara causa por la cual no debíamos paralizar la obra de construcción del edificio en controversia. Contestaron nuestra orden tanto la Junta como la Telefónica. Esta última, en particular, aduce que la edificación en cuestión ya fue subastada y que se han invertido ya cientos de miles de dólares en dicho proyecto, por lo que su paralización ocasionaría graves pérdidas.

Habiendo comparecido las partes, estamos preparados para resolver.

## II

Atendemos el segundo señalamiento de error, que de por sí es suficiente para disponer de este caso en esta etapa de los procedimientos.

La Sec. 98 del Reglamento de Zonificación de Puerto Rico[1] establece una válvula de escape dentro del rígido marco de la zonificación en Puerto Rico. Valiéndose de una figura denominada "variación", se provee para que un titular pueda solicitar cambios a las restricciones que sujetan su propiedad. Sobre la importancia social de las variaciones, véanse: *Asoc. Res. Baldrich, Inc. v. J.P. de*

[1] Reglamento de Planificación Núm. 4, Junta de Planificación de Puerto Rico, Santurce, 1992. Las otras disposiciones de este reglamento aludidas en el segundo señalamiento de error se refieren a: la aplicación del Reglamento de Zonificación, *supra*, (Sec. 1.04), definiciones (Sec. 2.01), requisitos para solicitar la rezonificación (Sec. 4.06), las vistas públicas que han de anteceder a una decisión al respecto (Sec. 4.08) y las limitaciones al uso de estacionamientos (Sec. 84.01).

*P.R.*, 118 D.P.R. 759 (1987); *Quevedo Segarra v. J.A.C.L.*, 102 D.P.R. 87 (1974).

█ El reglamento aludido establece dos tipos de variación: una variación en el uso de una propiedad (Sec. 98.05) y "otras variaciones", que consisten en solicitudes para alterar los requisitos reglamentarios (Sec. 98.06). Aunque la redacción de ambas secciones es imprecisa, sí queda claro que la primera obliga a la Junta a celebrar unas vistas públicas antes de acceder a una solicitud de variación en uso.([2]) La Junta, sin embargo, no está obligada a celebrar vistas cuando lo que se solicita son "otras variaciones". Reglamento de Zonificación (Reglamento de Planificación Núm. 4, Junta de Planificación de Puerto Rico, Santurce, 1992).

La Telefónica presentó ante la Junta una solicitud de variación sin indicar cuál de ambas era la que solicitaba. La Junta, a su vez, consideró y accedió a la solicitud sin precisar si concedía un permiso de variación en uso o de otro tipo. Ya que no celebró una vista pública y el Reglamento de Zonificación, *supra*, le ordena a hacerlo([3]) en casos de variación en uso, debemos asumir que concedió un permiso de "otra variación".

Nos toca interpretar dicho apartado y decidir si los planes que tiene la Telefónica para el edificio en cuestión pueden ejecutarse con un mero permiso de "otra variación" o si requieren un permiso de variación en uso.

█ El Reglamento de Zonificación, *supra*, define la "variación" como una "[a]utorización para utilizar una propiedad para un uso prohibido por las restricciones impuestas a una zona o distrito y que sólo se concede para evitar

---

([2]) La Sec. 98.04 establece que: "La Junta ... celebrará vistas públicas para la consideración de variaciones en uso solicitadas y podrá considerar varias solicitudes de variación en una sola vista pública." Reglamento de Zonificación, *supra*, pág. 304.

([3]) Las agencias administrativas están obligadas a observar estrictamente las reglas que ellas mismas promulguen. *García Cabán v. U.P.R.*, 120 D.P.R. 167, 175 (1987).

perjuicios a una propiedad que, debido a circunstancias extraordinarias, la aplicación estricta de la reglamentación equivaldría a una confiscación de la propiedad". Sec. 2.01 del Reglamento de Zonificación, *supra*, pág. 25. No distingue, sin embargo, entre variaciones en uso y otras variaciones.

El hecho de que las variaciones difieran en torno a la exigencia de la celebración de una vista pública nos debe indicar que nos encontramos ante figuras jurídicas muy distintas. El texto de la sección aplicable a las variaciones en uso, Sec. 98.05, faculta a la Junta a "autorizar variaciones en uso cuando se pueda establecer que ninguno de los usos que están permitidos en el distrito es factible en la propiedad desde el punto de vista físico o económico". Reglamento de Zonificación, *supra*, pág. 304. Implica, por consiguiente, que el propietario de un solar desea utilizarlo para fines que no están permitidos en la zona que le corresponde.

La sección que trata las "otras variaciones", Sec. 98.06, autoriza a la Junta a "autorizar variaciones a los requisitos establecidos en [el] ... Reglamento *para los usos que tolera el distrito*". (Énfasis suplido.) Reglamento de Zonificación, *supra*, pág. 305. En estos casos la variación no va dirigida a alterar el uso, sino a dispensar al propietario del cumplimiento de uno o más de los requisitos que establece el Reglamento de Zonificación, *supra*, para la zona donde radica el inmueble. "La magnitud de la variación es la necesaria para asegurar la viabilidad *del uso permitido*." (Énfasis suplido.) Sec. 98.06(1) del Reglamento de Zonificación, *supra*, pág. 305. Una persona que solicita una variación según este apartado, al contrario de aquel que invoca la variación en uso, desea seguir utilizando la propiedad para el uso permitido, pero necesita que se le exima de uno de los requisitos de zonificación para "asegurar la viabilidad del uso permitido".

En el caso de marras, los usos a los que se destinará el

edificio en cuestión, a todas horas del día y todos los días de la semana, ciertamente no son viables en un área zonificada exclusivamente como residencial.

Como antes señaláramos, la Telefónica se propone edificar un estacionamiento multipisos y un centro de actividades, entre otras cosas, para sus empleados sobre dos lotes zonificados según la clasificación R-3 y C-2. El primero de estos sólo permite casas residenciales, lo que claramente excluye los fines propuestos por la Telefónica. Sec. 13.02 del Reglamento de Zonificación, *supra*. El segundo permite varios tipos de negocios, con restricciones. Sec. 22.00 del Reglamento de Zonificación, *supra*. Para armonizar los planes de la Telefónica con la reglamentación vigente era necesario alterar el uso del lote R-3 y, tal vez, el del C-2. Su solicitud ante la Junta, al menos respecto al lote R-3, debió haber sido considerada como una variación en uso.

■ Irrespectivamente de cómo la Telefónica denominó la variación solicitada, la Junta *estaba obligada a celebrar unas vistas públicas previo a una decisión en torno a la petición de la Telefónica, si la variación implicaba cambios al uso al cual está destinada la propiedad*, tal como sucede en el caso ante nos. Tales vistas públicas son de particular importancia, ya que, como hemos resuelto antes, las variaciones sólo deben concederse en situaciones excepcionales, cuando están claramente justificadas, lo que implica sopesar cómo quedarían afectados los distintos intereses concernidos. *A.R.P.E. v. J.A.C.L.*, 124 D.P.R. 858 (1989); *Fuertes, Guillermety v. A.R.Pe.*, 130 D.P.R. 971 (1992). En el caso ante nos, debido a que las vistas públicas nunca se celebraron, la variación concedida no puede afectar el uso de dicho lote. Por razón de ello, el uso dispuesto en la clasificación R-3 no podrá ser variado hasta tanto la Telefónica presente formalmente una solicitud de variación en uso y la Junta acceda a éste, si ello procede, luego de convocar y celebrar las vistas públicas correspondientes.

Aun en la suposición de que la variación concedida para la edificación haya sido una dispensa del reglamento sin cambios en el uso, la Junta debió haber especificado la naturaleza y la extensión de la variación concedida, como le obliga la Sec. 98.07 del Reglamento de Zonificación, *supra*, igual que debió haber tomado en consideración los factores enumerados en la Sec. 98.06 del Reglamento de Zonificación, *supra*, cosas que no hizo. El expediente demuestra que la Junta no tomó ninguno de estos pasos.

Por ello, la edificación que, actualmente, se lleva a cabo en los predios de la Telefónica viola las disposiciones legales aplicables.

## III

Por los fundamentos antes expuestos, se dictará sentencia para revocar aquella emitida por el Tribunal de Apelaciones. Aunque en estos momentos no ordenamos la paralización de la obra, resulta menester señalar que, en ausencia de un permiso válido de variación en uso, queda prohibido destinar el edificio en construcción a otros usos que no sean los permitidos por sus correspondientes clasificaciones de zonificación. Se remitirán los autos a la Junta para que, si la Telefónica lo interesa, lleve a cabo los procedimientos correspondientes, entre ellos, la celebración de una vista pública, a tenor con las disposiciones del Reglamento de Zonificación y de lo aquí dispuesto.

*Se dictará sentencia de conformidad.*