Varona Méndez, Jueza Ponente
*879 TEXTO COMPLETO DE LA SENTENCIA
En el año 2002, el Sr. Iván Cordero Quijano (Sr. Cordero o concesionario del proyecto) sometió ante la Administración de Reglamentos y Permisos (A.R.P.E.) una solicitud de servicios de anteproyecto para la construcción y eventual establecimiento de una barra/cafetería bajo el nombre de Yakum Pub. Éste ubicaría en el Barrio Membrillo del Municipio de Camuy en una zona clasificada como R-0 bajo los planos de zonificación del sector. Eventualmente, la A.R.P.E. autorizó la segregación del predio donde ubicaría el proyecto de una finca propiedad de la sucesión de Ciprián J. Quijano. 
En mayo de 2003, el Sr. Cordero solicitó ante la A.R.P.E. la reactivación de su caso y sometió una segunda solicitud de servicios de anteproyecto para el Yálcum Pub. El proyecto proponía la construcción de un edificio comercial y contaría con 36 estacionamientos. Como parte de los documentos sometidos, incluyó la notificación a vecinos (Formulario de A.R.P.E. Núm. 15.163a). Este documento se requiere en aquellos casos en que se solicite el permiso vía excepción o variación y deberá incluirse en él aquellos dueños de propiedades que radiquen dentro de una distancia de sesenta (60) metros-desde los límites del solar objeto de petición hasta los límites de cualquier solar que radique dentro de los sesenta (60) metros. Surge de este documento que sólo se incluyó como vecino notificado de dichos trámites al Sr. William Rosario. Obra en el expediente un segundo formulario fechado el 16 de septiembre de 2003 en el cual se incluyó a Wilfredo Quijano, María C. Quijano, Ciprián Quijano y Ángel Jiménez.
Surge del memorial explicativo sometido ante la A.R.P.E., que consciente de la zonificación distrito R-0 del sector," -que no contempla el uso para barra con venta de bebidas al detal-, se solicitó la expedición de permiso del anteproyecto vía excepción, a tenor de la sección 84.00 del Reglamento de Zonificación Núm. 4 de 5 de noviembre de 2000.
El 12 de junio de 2003, la A.R.P.E. dictó una resolución mediante la cual autorizó el anteproyecto. Surge de las determinaciones de hechos, en síntesis, lo siguiente:

“1. El lugar donde ubicaría el proyecto no estaba afectado por zona inundable,

*880 2. el área del solar sería de 1 cuerda de terreno,

3. el proyecto consistiría en un edificio de una planta con dimensiones aproximadas de 1,967.00 m2,

4. se proponían 36 estacionamientos, y

5. no constaban querellas para el proyecto. ”

Además, el proyecto cumplía con todos los parámetros, excepto el reglón de los estacionamientos donde se proponían 36 estacionamientos y lo requerido eran 37. No obstante, se incluyó una nota al calce que leía: “Tiene espacio en el predio para proveer este estacionamiento y cumplir con la cantidad requerida”.
En cuanto a la solicitud de variación y excepción, la resolución expone lo siguiente y citamos:

“1. Dado que la finca tiene una cabida de aprox. 10.0 cdas. Se propone la segregación de una cuerda para cumplir con la cabida requerida para un caso de excepción según la subsección 84.05-18 del Reglamento.

2. El proyecto no afecta el sector inmediato donde sólo ubica una vivienda dentro del radio de 60.0 mts., toda vez esta finca está vacante y colinda con otra finca de 25 cdas. Las demás residencias ubican a más de 150 mts.

3. Se propone la utilización de aire acondicionado y plafones acústicos para mitigar cualquier ruido en el exterior.

4. El proyecto no genera variaciones en los parámetros de diseño, sólo una pequeña variación de un espacio de estacionamiento, el cual podría ser incluido como parte de los planos de construcción, dado el gran tamaño del solar. ”

En las conclusiones de derecho, la A.R.P.E. cita la sección 10.00 del reglamento, referente a los usos en distritos de zonificación R-0, y concluye que el uso propuesto no figuraba entre los permitidos, por lo que tenía que evaluarse el caso vía excepción. Para esto citó la sección 84.00 y expuso una serie de criterios con los cuales tenía que cumplir el proponente del proyecto.
Finalmente, la resolución incluye una “Decisión” en donde autoriza el anteproyecto condicionado a lo siguiente y citamos:

“1. A que previo a permiso de construcción deberá someter evidencia de la aprobación de la Consulta Ambiental del proyecto conforme a los criterios que establece la Orden Administrativa ARP-96-8, CRITERIOS PARA IDENTIFICAR CASOS PARA LOS QUE SE PRESUME NO TIENEN IMPACTO AMBIENTAL SIGNIFICATIVO. De cualificar el proyecto como una Exclusión Categórica, deberá cumplimentar y presentar con el proyecto de construcción final la forma ARPE 15.187 (Die. 1996)

2. Deberá incluir un estacionamiento adicional para cumplir con la subsección 74.03 del Reglamento, la cual requiere 37 espacios de estacionamientos mínimos para este uso.

3. A que el área de estacionamiento se desarrolle y asfalte, conforme a lo dispuesto en la Sección 74.00 del Reglamento.

4. A que el solicitante no intensifique el uso ni amplíe la edificación. De violarse estas condiciones, esta Administración considerará la posible revocación del permiso que finalmente se otorgue. ” [Negrillas en el *881 original]
El 15 de julio de 2003, el Sr. Cordero presentó ante la A.R.P.E. una solicitud de servicios de permiso de construcción. El 13 de enero de 2004, el permiso fue expedido sujeto a las condiciones allí expuestas. En septiembre de 2004, Marisol González Román, una de las aquí recurrentes, presentó una querella ante la A.R.P. E. Anterior a esto, los “vecinos del sector Palmarito ” habían cursado una caita al Ing. Eduardo Rivera, Director Regional de A.R.P.E., donde expresaron su oposición a la construcción del proyecto, que ellos no habían sido consultados y solicitaron la celebración de una vista pública. En respuesta a la querella, A.R.P.E. ordenó la paralización del proyecto.
El 28 de septiembre de 2004, el Sr. Cordero, a través del ingeniero Holvin L. Montalvo Cruz, solicitó levantar el permiso de construcción y admitió que en el proyecto se estaba construyendo un área no contemplada en los planos aprobados. El 14 de octubre de 2004, A.R.P.E. contestó la misiva indicando que habían inspeccionado el área y encontraron que se estaba construyendo sin haberse levantado el permiso de construcción, que se estaban haciendo ampliaciones no contempladas en los planos y que existía una querella en contra del proyecto. Además, se le informó que el caso se había referido para vista administrativa. La vista se citó para el 30 de noviembre de 2004. Ese día, los recurrentes se enteraron de la autorización del anteproyecto, y el 15 de diciembre de 2004 apelaron la determinación ante la Junta de Apelaciones sobre Construcciones y Notificaciones (J.A.C.L.).
Luego de varios incidentes procesales, la J.A.C.L. celebró una vista evidenciaría el 5 de diciembre de 2005, y el 18 de octubre de 2006 emitió la resolución objeto de esta revisión. Mediante ésta confirmó la determinación de la A.R.P.E. Expresó que los fundamentos para oponerse a la solicitud eran especulativos porque el uso aún no estaba en operación. En cuanto a la alegación levantada por los recurrentes sobre la falta de notificación, determinó que no se presentó prueba para sustentarla. Estableció, además, que la resolución emitida por A.R.P.E. había cumplido con los criterios establecidos, pues entendía que era clara y exponía los hechos y el derecho que sustentaba la determinación. Por último, impuso las siguientes condiciones: (1) el cumplimiento de la reglamentación de la Junta de Calidad Ambiental y el Departamento de Bomberos, y (2) el horario de operación sería hasta la 1:00 am.
Inconforme, los recurrentes sometieron ante nos un escrito de revisión, en el que nos piden que revoquemos la resolución recurrida. Señalan que la J.A.C.L. cometió los siguientes errores:

“1) Erró la J.A.C.L. al confirmar un dictamen de la A.R.P.E. en el que dicha agencia no especificó las personas naturales o jurídicas a las cuales notificó el mismo en calidad de partes.

2) Erró la A.R.P.E. al emitir en este caso una resolución que carece de las determinaciones de hechos y conclusiones de derecho que justifiquen la concesión de la autorización de una barra vía excepción; erró la J. A.C.L. al emitir una resolución igualmente defectuosa, confirmando la actuación de la A.R.P.E., y erraron ambos organismos al autorizar el anteproyecto vía excepción, sin que de sus Resoluciones, ni de sus expedientes administrativos obre evidencia alguna que demuestre que se cumplió con los criterios reglamentarios para conceder dicho tipo de permiso.

3) Erró laA.R.P.E. al autorizar un anteproyecto sin que hubiese culminado la fase de evaluación ambiental del mismo ante la Junta de Calidad Ambiental, y erró la J.A.C.L. al confirmar dicha determinación huérfana del aval de dicha agencia.

4) Erró la A.R.P.E. al autorizar un anteproyecto sin que la parte recurrida le certificase los nombres y direcciones de todos los propietarios dentro de un radio de sesenta metros y al no notificarles con copia de su dictamen a pesar de que la parte recurrente demostró que la información sometida por la parte recurrida sobre 
*882
este particular era defectuosa.

5) Erró la J.A.C.L. al emitir una Resolución pro forma que no refleja que consideró, aquilató correctamente, ni resolvió los conflictos de prueba ante su consideración y sus determinaciones no describen los hechos que fueron rechazados, ni la razón para ello.

6) Erró la J.A.C.L. al no tomar en cuenta al emitir su Resolución que laA.R.P.E. no ha expedido el permiso de construcción autorizando el anteproyecto, que la obra venía realizándose sin éste y deforma distinta a como se había autorizado y que la A.R.P.E. había iniciado un procedimiento administrativo para atender la querella de las partes recurrentes contra el proyecto antes de que se apelara en la J.A. C.L. ”

II
Estándar de revision judicial
La revisión judicial de decisiones administrativas tiene como fin primordial delimitar la discreción de los organismos administrativos para asegurar que éstos desempeñen sus funciones conforme la ley. Mun. de San Juan v. J.C.A., 149 D.P.R. 263, 279 (1999). Estas determinaciones gozan de gran deferencia y respeto de parte de nuestros tribunales. Mun. de San Juan v. J.P., 169 D.P.R. _, 2006 J.T.S. 164; Hernández v. Centro Unido de Detallistas, 168 D.P.R. _, 2006 J.T.S. 140. Lo anterior se fundamenta en la vasta experiencia y el conocimiento especializado que poseen los organismos administrativos sobre los asuntos que estatutariamente se les ha encomendado. Id. No obstante, “la deferencia reconocida no equivale a la renuncia de la función revisora del tribunal en instancias apropiadas y meritorias, como resulta ser cuando el organismo administrativo ha errado en la aplicación de la ley. ” Rebollo v. Yiyi Motors, 161 D.P.R. 69 (2004).
La sección 4.5 de la Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A see. 2175, dispone que “las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo. ” En cuanto a las conclusiones de derecho, el referido estatuto dispone que podrán ser revisadas “en todos sus aspectos por el tribunal. ” Id.
Excepciones y Variaciones
El Reglamento de Planificación Número 4 (Reglamento), conocido como Reglamento de Zonificación de Puerto Rico, en su edición de 5 de noviembre de 2000, fue adoptado al amparo de la Ley Orgánica de la Junta de Planificación de Puerto Rico, 23 L.P.R.A. see. 62 et seq., y tiene el propósito de guiar y controlar el uso y desarrollo de los terrenos de Puerto Rico con el fin de contribuir a la seguridad, el orden, la convivencia, la solidez económica y el bienestar general de los actuales y futuros habitantes. Sección 1.03. Según este reglamento, la zonificación es un instrumento para designar usos de terrenos. Sección 2.01.
De acuerdo a la resolución recurrida, en el caso de autos, la ubicación del terreno para el cual se ha solicitado la consulta de uso ubica en un Distrito Residencial de baja densidad poblacional (R-0). Según indica el Reglamento, los usos permitidos en este tipo de zonas están limitados a aquellos de tipo agrícola, como venta de estos productos; el establecimiento de unidades residenciales y aquellos otros que se permitan mediante el procedimiento de excepciones. Sección 10.02.
El Reglamento define excepción como una “autorización para utilizar una propiedad para un uso que la reglamentación admite y tolera en una zona o distrito, siempre que se cumpla con los requisitos o condiciones establecidas en el reglamento aplicable para la autorización del uso de que se trate.” El propósito de estas excepciones es identificar aquellos compatibles con el carácter esencial del distrito, que en forma discrecional podrían autorizarse sin detrimento al propósito del distrito. Sección 84.02.
*883 Con respecto al proceso de consideración de excepciones, la Sección 84.03 establece que la determinación se hará a la luz de los siguientes criterios:

“1. Se proteja la salud, seguridad y bienestar de los ocupantes de la propiedad objeto de la solicitud, así como de propiedades limítrofes.

2. No se menoscabe el suministro de luz y aire a la edificación a usarse u ocuparse, o a las propiedades limítrofes.

3. No se aumente el peligro de fuego.

4. No se ocasione reducción o perjuicio a los valores de las propiedades establecidas en áreas vecinas.

5. Se demuestre la viabilidad, adecuacidad y conveniencia del uso solicitado.

6. Se cumpla con las condiciones establecidas en este Reglamento o que puedan establecerse para el caso particular. ”

Por su parte, las variaciones son una válvula de escape dentro del rígido ordenamiento de zonificación vigente en Puerto Rico. Asoc. Res. Park Side, Inc. v. J.P., 139 D.P.R. 349 (1995). Esta figura atenúa el rigor reglamentario permitiendo cambios a las restricciones que sujetan el uso de la propiedad cuando se demuestra que, dado a circunstancias especiales, la aplicación de la reglamentación puede resultar irrazonable y ocasionar perjuicios al propietario. Id; A.R.P.E. v. J.A.C.L., 124 D.P.R. 858 (1989). Lo anterior impide que una reglamentación existente se convierta en un instrumento inflexible que le impida amoldarse a situaciones extraordinarias. T-JAC, Inc. v. Caguas Centrum Limited Partneship, S.E., 148 D.P.R. 70 (1999). No. obstante, en la concesión de variaciones tendrá primacía el interés del vecindario sobre el interés propietario. Quevedo Segarra v. J.A.C.L., 102 D.P.R. 87 (1974), a la pág. 94.
La variación en uso es un permiso para dedicar una propiedad a un uso prohibido por las restricciones impuestas por el Reglamento de Zonificación en una zona o distrito y que sólo se concede vía excepción para evitar perjuicios a una propiedad cuando se demuestre que, debido a circunstancias extraordinarias, la aplicación estricta de esa reglamentación equivaldría a una confiscación de la propiedad. Sección 2.01, Mun. de San Juan v. Bosque Real, S.E., 158 D.P.R. 743 (2003); T-JAC, Inc. v. Caguas Centrum Limited Partnership, supra. Este tipo de variación tiene como requisito adicional la celebración de vistas públicas. Así se desprende de la sección 82.04 cuando establece que “[l]a Junta podrá considerar varias solicitudes de variaciones en una sola vista pública... ”.
Ahora bien, se ha resuelto reiteradamente que una decisión administrativa en la que se conceden o deniegan excepciones o variaciones acorde a los Reglamentos de Zonificación, debe estar debidamente fundamentada y demostrar que la agencia analizó los criterios desarrollados jurisprudencialmente y los establecidos por reglamentación que deben considerarse al autorizar o denegar el uso solicitado. Vélez Rodríguez v. A.R.P.E., 167 D.P.R. _ (2006), 2006 J.T.S. 78; López v. Junta Planificación, 80 D.P.R. 646, 664 (1958).
En Asoc. C.D. Octubre v. JACL, 116 D.P.R. 326 (1985), se señaló que cuando los organismos administrativos encargados de la planificación y ordenamiento físico del país autoricen o denieguen el uso solicitado de un solar por el mecanismo de “excepción”, deben tomar en consideración, entre otros, los siguientes factores: (1) la necesidad que tenga el vecindario en particular de la actividad que se pretende establecer y si en el área ya existen actividades similares; (2) la conveniencia de la actividad para el vecindario o sector en particular, para que el mismo no resulte adverso a la salud, la moral, la seguridad y el bienestar público del vecindario; (3) la característica particular del vecindario en controversia; (4) la deseabilidad de que *884 se concentren instalaciones similares en el mismo sector; (5) el tráfico vehicular y el ruido que generará la actividad solicitada; y (6) si el carácter específico del vecindario particular debe recibir un tratamiento distinto al del sector en general. Id., págs. 336-337.
Puntualizamos que por la naturaleza del interés público en la planificación urbana, las variaciones no se favorecen. Éstas deben concederse cuando concurran circunstancias extraordinarias y para evitar peijuicios a la propiedad. No deben aplicarse con laxitud los requisitos para aprobar las variaciones porque ello socava la política pública de desarrollo ordenado latente en la legislación sobre planificación. Asoc. Res. Park Side, Inc. v. J.P. I, supra.
Ill
Ciertamente, las variaciones y excepciones cumplen la importante función de brindar la flexibilidad necesaria en la aplicación del Reglamento de Zonificación para preservar su utilidad como instrumento de ajuste de los intereses en conflicto entre el dueño del terreno de usarlo en la forma que él considere más conveniente y el interés del público en controlar el uso de la tierra y promover un desarrollo urbano integral, racional y ordenado. Son ellas una parte indispensable en el proceso integral de controlar los usos de la tierra en beneficio del bienestar general. En la concesión de variaciones y excepciones entran en juego factores técnicos y complejos, cuya evaluación requiere estudios y conocimientos especializados.
Ahora bien, toda variación persigue un fin pragmático, que sirva para proveer a A.R.P.E. de un mecanismo mediante el cual, luego de una evaluación caso a caso conforme las leyes, reglamentos de planificación aplicables y conocimiento especializado, le permita atender posibles circunstancias extraordinarias que se presenten en un proyecto propuesto en particular, para de ese modo evitar peijuicios no deseados. Se trata de una histórica facultad discrecional de la agencia, necesaria para poder viabilizar al máximo la política pública urbana, a la vez que se atiende adecuadamente los problemas y limitaciones que cada solicitud puede presentar en una gama extensa de renglones urbanísticos.
Es precisamente bajo esta óptica que nos corresponde analizar si la A.R.P.E. actuó dentro del marco de la ley y su autoridad, al conceder las variaciones mediante el mecanismo de excepciones solicitadas.
Discutiremos en conjunto los errores señalados debido a su estrecha relación. Ante cuestionamientos mixtos de hechos y de derecho, el tribunal, con el amplio poder de revisión que le concede la L.P.A.U. y la jurisprudencia aplicable, está llamado a determinar si la determinación administrativa es una razonable y consistente con el propósito legislativo. El criterio a aplicarse no es si la decisión administrativa es la más razonable o la mejor al arbitrio del foro judicial; más bien se trata de examinar si la determinación administrativa, en interpretación de los reglamentos y las leyes que le incumbe implementar, es una razonable.
Un examen detenido de la decisión emitida por J.A.C.L. revela que este organismo no hizo un análisis exhaustivo del punto vital de la controversia, esto es, el efecto que tendría la concesión del permiso en la seguridad, la salud y el interés de la comunidad.
Los recurrentes son residentes de propiedades vecinas a la que es objeto de este recurso, en el Barrio Membrillo del Municipio de Camuy. El sector donde ubican las propiedades de las paites recurrentes y la de la parte recurrida tienen una clasificación residencial cero (R-0) o de baja densidad poblacional. La A.R.P.E. segregó el predio objeto de este recurso de una finca de mayor cabida con el propósito de permitir un anteproyecto por vía de excepción al cual se le requiere una cabida no mayor de una cuerda en un distrito residencial cero (R-0). Aunque la construcción de una cafetería puede aportar al desarrollo de una comunidad, es preciso considerar los planteamientos de los vecinos, quienes aducen que al tratarse de una barra, ésta ha de causar una interferencia en los accesos y alterar la naturaleza residencial de su entorno.
*885 En su resolución, la J.A.C.L. no consideró que la A.R.P.E. había iniciado un procedimiento administrativo y pautado una vista evidenciaría para atender la querella de las partes recurrentes contra el proyecto. Además, de la Resolución no surge que la J.A.C.L. tomase en consideración y aquilatase toda la prueba testifical y documental sometida por las partes recurrentes. Dicho de otro modo, la decisión no refleja que el organismo hubiese considerado los conflictos de pruebas, y sus determinaciones no describen los hechos rechazados.
En el caso de autos, el sector donde se propone establecer una barra es de carácter residencial. Se trata del lugar donde tienen sus viviendas las partes recurrentes. El solar en que se propone el uso propuesto tiene un sólo camino de acceso sin salida desde la carretera estatal número 2. En la misma entrada y salida del camino, ya las agencias a cargo de la planificación física de Puerto Rico autorizaron otra barra. Los usuarios de la barra (sports bar) que se pretende establecer en el sector tendrían que entrar a la misma por un estrecho camino a cuyos márgenes tienen establecidos sus hogares los recurrentes.
Resulta peitinente reconocer la oposición de la comunidad a que se concentren instalaciones similares en dicho sector, ya que el tráfico vehicular, el ruido que generará la actividad en horas de la noche y la entrada y salida de personas ajenas a la comunidad para ganar acceso a dicho local durante las horas de la noche interrumpirá la paz social de la comunidad aledaña.
Considerados los factores establecidos jurisprudencialmente para la concesión de variaciones, resulta evidente que no se estableció en el caso ante nuestra consideración la necesidad del vecindario de la actividad que se pretende establecer, dada la existencia de otra barra. Tampoco quedó demostrada la conveniencia de la actividad para el vecindario o sector en particular, tomando en consideración la característica particular del vecindario en controversia. Ni la prueba ni la resolución establecieron la deseabilidad de que se concentren instalaciones similares en el mismo sector ni se consideraron los efectos del tráfico vehicular y el ruido que generará la actividad solicitada.
Resulta por ello inaceptable y a todas luces irrazonable la conclusión de la J.A.C.L. de que la actividad que generará dicho negocio no resulta adversa a la salud, moral, seguridad y bienestar público del vecindario.
IV
Conforme a lo expuesto, revocamos en su totalidad la Resolución recurrida emitida por J.A.C.L., el 18 de octubre de 2006, en el caso numero 2004-149-AC, en la que se confirmó la decisión de la A.R.P.E. y autorizó el anteproyecto vía excepción.
Lo acuerda y manda el Tribunal y lo certifica la Secretaria.
María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones
ESCOLIOS 2008 DTA 29
1. La finca principal contaba con una cabida superficial de 38,294.351 metros y el predio segregado cuenta con una cabida superficial de 3,930.3554 metros.
2. Caso número 02AX8-00000-6811.
3. El 7 de diciembre de 2006 ordenamos a la J.A.C.L. la reproducción de la prueba oral, no obstante la vista que fue reproducida fue la que se realizó el 13 de septiembre de 2005 y no la del 5 de diciembre de 2005, donde alegadamente se presentaron los testimonios de los recurrentes.