# 2001 DTA 178

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL DE AGUADILLA-MAYAGUEZ**
**PANEL IV**

ALDO ALVAREZ MONTALVO
Opositor-Recurrente

v.

ADMINISTRACION DE REGLAMENTO Y PERMISOS
Agencia Recurrida

MIGUEL A. ALVARADO LOPEZ
Solicitante Recurrido

Núm. KLRA-00-00898

San Juan, Puerto Rico, a 23 de mayo de 2001

Panel integrado por su Presidenta, la Juez López Vilanova,
el Juez Córdova Arone y la Juez Feliciano Acevedo

Feliciano Acevedo, Jueza Ponente

**TEXTO COMPLETO DE LA RESOLUCION**

El recurrente, señor Aldo Alvarez Montalvo, nos solicita que revisemos una resolución emitida el 29 de septiembre de 2000 por la Administración de Reglamentos y Permisos (A.R.P.E.), archivada en autos copia de su notificación el 11 de octubre de 2000. Mediante la misma, A.R.P.E. autorizó un anteproyecto de construcción de una casa situada en el Barrio Boquerón, Sector El Combate en el Municipio de Cabo Rojo, presentado por el recurrido, señor Miguel A. Alvarado López.

Alega el señor Alvarez que A.R.P.E., al autorizar dicho anteproyecto, actuó contrario a lo que dispone la ley, por razón que se estaba incurriendo en violaciones al Reglamento de Zonificación Núm. 17 de la Zona Costanera y de Accesos a las Playas y Costas de Puerto Rico de 3 de marzo de 1987 y al Reglamento de Zonificación Núm. 4 de 16 de septiembre de 1992. El 30 de octubre de 2000, éste presentó ante A.R.P.E. una Moción de Reconsideración sobre la cual dicha agencia no actuó. Así las cosas, el recurrente solicita a este foro judicial que revisemos la decisión de esta agencia administrativa.

Estudiado el expediente, el derecho aplicable y las posiciones de las partes, procede revocar la resolución recurrida y devolver el caso a la Administración de Reglamentos y Permisos para que se siga el trámite indicado más adelante.

## I

Los hechos relevantes según el expediente, se exponen a continuación. El recurrente, señor Aldo Alvarez Montalvo, es dueño de un solar, donde ubica su residencia, en el Barrio Boquerón, Sector El Combate en el Municipio de Cabo Rojo. En el año 1995, el señor Federico A. De Jesús, dueño de un solar que colinda con la zona marítimo-terrestre y con el solar del recurrente, sometió ante A.R.PE. una solicitud para lotificar la finca de su propiedad para la formación de seis solares. El 3 de abril de 1995, esta agencia aprobó la segregación, condicionada a que éste realizara varias obras de infraestructura, tales como proveer servicios de agua, luz y calle a los solares solicitados. El 12 de agosto de 1999, el señor De Jesús transfirió por compraventa al recurrido, señor Miguel Alvarado López, el solar número cinco (5) con cabida de 421.58 (cuatrocientos veintiún con cincuenta y ocho) metros cuadrados.

Alega el recurrente que el 8 de julio de 2000, el recurrido, de manera ilegal y sin permiso, comenzó en el solar una construcción con materiales permanentes con zapatas y varillas en columnas y que invadió uno de los patios requeridos por el Reglamento de Zonificación Núm. 4 y el Reglamento Núm. 17. Por tales razones, el 10 de julio de 2000, el señor Alvarez presentó ante A.R.P.E. una querella para que se eliminara la construcción.

El 13 de julio de 2000, A.R.P.E. ordenó al recurrido la paralización de la construcción. No obstante, el 25 de julio de 2000, el recurrido sometió ante la consideración de A.R.P.E. un anteproyecto de construcción de una vivienda sobre columnas de hormigón armado y bloques en el predio de su propiedad. El 18 de septiembre de 2000, el recurrente se opuso al mismo alegando que el anteproyecto presentaba variaciones al Reglamento de Zonificación de la Zona Costanera y de Accesos a las Playas y Costas de Puerto Rico de 3 de marzo de 1987, relacionado al retiro de la zona marítimo-terrestre y al Reglamento de Zonificación Núm. 4 de 16 de septiembre de 1992 en lo relacionado a los patios requeridos.

El 29 de septiembre de 2000, A.R.P.E., sin conceder vista pública administrativa, mediante resolución. aprobó el anteproyecto autorizando la construcción de la vivienda por considerar que el proyecto para el uso propuesto era viable a tenor con la subsección 98.06 del Reglamento de Zonificación Núm. 4., que las variaciones eran cónsonas con las características del sector, que el solar forma parte de un desarrollo residencial aprobado bajo la solicitud 95-55-B556-MPD y que las variaciones no afectarán la salud y seguridad de los vecinos. Además, A.R.P.E. determinó que de seguirse el cumplimiento estricto de las disposiciones reglamentarias aplicables produciría una prohibición irrazonable del derecho del disfrute de su propiedad. A su vez, la Agencia condicionó el anteproyecto al cumplimiento de todas y cada una de las condiciones aplicables en el Reglamento de Planificación Núm. 13 para un proyecto afectado por una Zona Inundable 2; que previo al permiso de construcción deberá someter el endoso del Departamento de Recursos Naturales, que previo al permiso de construcción se deberá haber obtenido las recomendaciones de la Junta de Calidad Ambiental; que el solicitante no intensifique el uso, ni amplíe la edificación, y a que los planes finales de la estructura a certificarse cumplirán con las disposiciones del "*Uniform Building Code*".

Inconforme con esta resolución, el 30 de octubre de 2000, el recurrente presentó ante A.R.P.E. una Moción de Reconsideración sobre la cual la agencia no actuó. En vista de ello, el señor Alvarez recurrió ante este Honorable Tribunal. Señala que erró A.R.P.E. en lo siguiente:

*"1. al aprobar el Anteproyecto de Construcción del recurrido concediendo una "variación" sin seguir el procedimiento establecido de solicitar la misma y exponer los motivos, razones y fundamentos, no celebrar la vista pública administrativa para recibir la posición del recurrido, del recurrente y de las agencias públicas concernidas.*

*2. al conceder una variación para la construcción con materiales permanentes en un solar cuya segregación estaba condicionada a que se proveyera de infraestructura por el proponente de la segregación y que también está sujeto a restricciones legales por su colindancia con la zona marítimo-terrestre.*

*3. al resolver que tenía que conceder una variación para permitir una construcción en el solar bajo el supuesto de que, de lo contrario, el solar sería irrazonablemente afectado por la reglamentación.*

*4. al no aplicar al recurrido la doctrina del daño autoinfligido, pues inició una construcción ilegal con materiales permanentes, con hechos falsos sobre el tamaño, la invasión de un patio lateral, en violación a las restricciones legales de la zona marítimo-terrestre y sin observar tampoco las características del área."*

El 12 de enero de 2001, este foro concedió a las partes una prórroga de veinte (20) días para que las partes recurridas expusieran su posición en cuanto a señalamientos de error. El 8 de febrero de 2001, se concedió las partes recurridas un término adicional de treinta (30) días para este mismo propósito. Finalmente, el 21 de marzo de 2001, se le concedió un término adicional de diez (10) días.

Atendidos los planteamientos levantados ante nos, revocamos la resolución recurrida por la Administración de Reglamentos y Permisos y devolvemos a la Agencia para los trámites ulteriores. Veamos.

## II

La primera alegación del señor Alvarez se reduce a que para que A.R.P.E. pudiera considerar el anteproyecto de construcción, el recurrido tenía que solicitar una variación e indicar todas las razones y motivos por las cuales la solicitaba, y que aún si A.R.P.E. podía entrar a considerar una variación sin que él la solicitara, el Reglamento de Zonificación Núm. 4 exige a la Agencia la celebración de una vista pública administrativa.

La Ley Núm. 76 de 24 de junio de 1975, 23 L.P.R.A. sección. 71 *et. seq.*, creó la Administración de Reglamentos y Permisos (A.R.P.E.). Desde entonces, esta Agencia realiza las funciones que llevaba a cabo la Junta de Planificación. Se confirió a este nuevo organismo la facultad de aplicar y velar por el cumplimiento de las leyes y reglamentos de planificación, quedando el mismo adscrito a la Junta de Planificación. *Junta de Planificación v. J.A.C.L.,* 109 D.P.R. 210 (1979); *Asoc. CD. Octubre v. J.A.C.L.,* 116 D.P.R. 326 (1985). Lo pertinente a este caso en cuanto a los deberes y funciones del Administrador y de la Agencia se encuentra: aplicar y velar por el cumplimiento de sus propios reglamentos, de los Reglamentos de Planificación de Puerto Rico para el desarrollo, subdivisión y uso de terrenos y para la construcción y uso de edificios, así como el cumplimiento de toda ley estatal, ordenanza o reglamentación de cualquier organismo gubernamental que regule la construcción en Puerto Rico. Art. 5 de la Ley Núm. 76, 23 L.P.R.A. sec. 71 d (p). Dispensar el cumplimiento de los requisitos de los Reglamentos de Planificación de conformidad con lo establecido en los mismos y en este Capítulo, asegurando siempre que dicha facultad no se utilice con el propósito o resultado de obviar las disposiciones reglamentarias vigentes. Art. 5 de la Ley Núm. 76, 23 L.P.R.A. sec. 71d (u). El Reglamento de Zonificación, Reglamento Núm. 4 de la Junta de Planificación de 16 de septiembre de 1992 y el Reglamento de Zonificación de

la Zona Costanera y de Accesos a las Playas y Costas de Puerto Rico, Reglamento Núm. 17 de la Junta de Planificación de 3 de marzo de 1987, son los Reglamentos que forman parte de la controversia del presente recurso de revisión. Como podemos ver, A.R.P.E. puede otorgar variaciones.

El Reglamento de Zonificación Núm. 4, dispone en la Subsección 98.01 que la Junta de Planificación o la Administración de Reglamentos y Permisos, según corresponda, podrá autorizar variaciones en los requisitos de este Reglamento, conforme se indica en esta Sección. A su vez, la Subsección 98.02 del mismo, establece que el propósito de las variaciones será evitar que la aplicación literal de los requerimientos de este Reglamento resultare en una confiscación del disfrute de la propiedad. La variación es el permiso para dedicar la propiedad a un uso prohibido por las restricciones impuestas en una zona o distrito y las excepciones, como la autorización para usar la propiedad en cierto modo que de antemano el propio Reglamento de Zonificación admite y tolera, siempre que cumpla con ciertas restricciones. *Asoc. C.D. Octubre v. J.A.C.L.*, 116, *supra*, pág. 332; *Quevedo Segarra. v. J.A. C.L.*, 102 D.P.R. 87 (1974); *López v. Junta de Planificación,* 80 D.P.R. 646 (1958). Como puede verse, las variaciones y excepciones cumplen la importante función de brindar la flexibilidad necesaria en la aplicación del Reglamento de Zonificación para preservar su utilidad como instrumento de ajuste de los intereses en conflicto entre el dueño del terreno a usarlo en la forma que él considere más conveniente y el interés del público en controlar el uso de la tierra y promover un desarrollo urbano integral, racional y ordenado. *Quevedo Segarra v. J. ACA., supra*, pág. 94. Por la naturaleza del interés público implicado, las variaciones a los requisitos de zonificación no se favorecen y deben utilizarse selectivamente en aquellas circunstancias en que un propietario demuestre que las restricciones le causaron un daño particular que no comparte con otros. *A.R.P.E. v. J.A.C.L.,* 124 D.P.R. 858 (1989). Reiteradamente, hemos resuelto que solamente se deben conferir variaciones en circunstancias extraordinarias y para evitar perjuicios a la propiedad. *Municipio v. Junta de Calidad Ambiental,* **2000 J.T.S. 193**; *T-JAC v. Caguas Centrum,* **99 J.T.S. 60;** *Asoc. de Residentes de Parkside, Inc. v. Junta de Planificación*, **99 J.T.S. 155;** *Fuertes y otros v. A.R.P.E.*, 134 D.P.R. 947 (1993).

El Reglamento de Zonificación establece los criterios para la concesión de variaciones, requiriendo para ello: 1) que la aplicación literal del Reglamento resulte en una restricción irrazonable del disfrute de una pertenencia, 2) que se demuestre que la concesión aliviará un perjuicio claramente demostrable, 3) que la concesión ha de redundar en los mejores intereses de la comunidad. Art. 53.07, 23 R.& R.P.R. sec. 9-1101. *Quevedo Segarra v. J. A.C.L., supra*, pág. 93.

El anteproyecto presenta unas variaciones que más adelante serán analizadas en la discusión del segundo señalamiento de error; no obstante, exponemos aquí una breve descripción. En cuanto al Reglamento de Zonificación Núm. 4, el anteproyecto presenta una variación máxima de 3.5 (tres punto cinco) metros en el patio delantero. Relacionado al Reglamento de la Zona Costanera y de Acceso a las Playas y de Puerto Rico, el mismo presenta la variación de no observar la faja de veinte (20) metros que debe ser dedicada al uso público y además propone la construcción de estructuras de carácter permanente dentro de la faja de treinta (30) metros. Además, el proyecto presenta una altura de 5.49 (cinco punto cuarenta y nueve) metros; por consiguiente, se requiere una separación no menos de 50 (cincuenta) metros de la Zona M-T, y la separación que se presenta es menor. Como podemos observar, son variaciones a los requisitos que exigen estos Reglamentos.

De otro lado, alega el recurrente que para que se conceda la variación, ésta tiene que ser solicitada de forma expresa, mostrando a su vez los fundamentos, razones y motivos por la cual se solicita. La Subsección 98.03 del Reglamento de Zonificación Núm. 4 expresa que toda variación deberá ser solicitada por el dueño, o su representante autorizado de la propiedad para la cual solicita la misma, utilizando el formulario que se designe para tales propósitos, señalando motivos, fundamentos y razones en apoyo de su solicitud. Del expediente se desprende que el recurrido no solicitó las variaciones, conforme lo requiere la Subsección 98.03 del Reglamento. Sin embargo, en *Junta de Planificación v. J.A.C.L, supra*, el Tribunal Supremo determinó que la Administración

de Reglamentos y Permisos no debe limitar indebidamente el ejercicio de su discreción al fundamento erróneamente aducido ante ella, sino que debe considerar todas las alternativas, a que el peticionario tiene derecho bajo la Ley, y la posibilidad de conceder una variación. Resulta entonces que el recurido no tenía la obligación de solicitar la variación de forma expresa debido a que A.R.P.E. tiene discreción de conceder variaciones de acuerdo a ciertos requisitos que dispone la ley.

Como parte del primer señalamiento de error, el recurrente alega que A.R.P.E concedió variaciones en ausencia de una vista pública administrativa. El Artículo 7 de la Ley Núm. 76, 23 L.P.R.A. sección 71f, dispone que el Administrador, previo a cualquier actuación, decisión o resolución en su función adjudicativa discrecional en los casos que se disponga mediante reglamento, sobre consultas de ubicación, concesiones y autorizaciones directas, proyectos públicos o casos que revistan un gran interés social, entre otros, deberá seguir el procedimiento de vista pública y notificación dispuesto en este Capítulo. Esto significa que se requiere una vista pública cuando A.R.P.E. esté ejerciendo su función adjudicativa discrecional o lo disponga un reglamento o que esté envuelto un interés social.

Cabe destacar que para comprender con mayor claridad si el caso presentado ante nuestra consideración requiere una vista pública administrativa, es necesario analizar cómo están clasificadas las variaciones anteriormente mencionadas, y para eso, hay que conocer los tipos de variaciones que prevalecen en nuestro ordenamiento.

El Reglamento de Zonificación Núm. 4 establece una diferencia entre las variaciones de uso y otras variaciones que son las conocidas como variaciones reglamentarias. En la Subsección 98.05 establece que la Junta o la Administración podrá conceder variaciones de uso cuando se pueda establecer que ninguno de los usos que están permitidos en el distrito es factible en la propiedad desde el punto de vista físico o económico. En cuanto a la variación de uso, se requiere una vista pública administrativa. De otra parte, la Subsección 98.06 dispone que la Junta o la Administración podrá autorizar variaciones a los requisitos establecidos en este Reglamento. Para los usos que tolera el distrito, se tomará en consideración, entre otros los siguientes factores:

*"1. La magnitud de la variación es la necesaria para asegurar la viabilidad del uso permitido y no es viable considerar otras alternativas para salvar el problema presentado.*

*2. La variación solicitada no afectará adversamente, entre otros, los siguientes factores:*

*a. La disponibilidad de la infraestructura*

*b. El contexto en el que ubica*

*c. El ambiente de la calle*

*d. La seguridad y la tranquilidad de los vecinos*

*3. Se logra un desarrollo urbano más compacto.*

*4. La densidad o la intensidad solicitada no conlleva convertir el distrito en otro.*

*5. La variación solicitada es cónsona con los propósitos de la disposición reglamentaria que se solicita sea modificada, así como la política pública."*

En estos casos, la celebración de la vista pública administrativa es discrecional.

Es decir, según el Reglamento de Zonificación, cuando hay una variación de uso lo que implica es que el propietario del predio lo utilizará para otros propósitos que no son los permitidos por el distrito o zona. En estos casos, la vista pública administrativa no es discrecional. En cambio, cuando se dispensa a la persona de cumplir con ciertos requisitos de los reglamentos, en esa circunstancia, la vista es discrecional. Una persona que solicita una variación, al contrario de aquél que invoca la variación de uso, desea seguir utilizando la propiedad para el uso permitido, pero necesita que se le exima de uno de los requisitos de zonificación para asegurar la viabilidad del uso permitido. *Asoc. Res. Parkside v. Junta de Planificación*, 139 D.P.R. 349 (1995).

El caso traído ante nuestra consideración no presenta variaciones de uso, por razón que no se va a alterar el uso del Distrito RT-00, que es residencial, zona en la cual ubica el solar, sino que queda demostrado que las variaciones antes descritas en este recurso, son alteraciones a los requisitos que exige el Reglamento de Zonificación Núm. 4 y el Reglamento de Zonificación de la Zona Costanera y de Acceso a las Playas y Costas de Puerto Rico. Por tanto, ante estas secciones de estos Reglamentos, es evidente que A.R.P.E. no venía obligada a celebrar una vista pública administrativa para conceder las variaciones, ya que estaba a su completa discreción.

No obstante, la Resolución JP-97-260 de la Junta de Planificación de 17 de octubre de 1997, alteró la situación del caso en lo que respecta a la discreción de A.R.P.E. para celebrar una vista pública administrativa. Establece esta Resolución que cualquier variación para aquellos distritos que sean de carácter turístico o no, que radiquen en el contexto físico espacial de la zona de interés turístico, requerirán, al menos, una vista pública mandatoria. El solar y la construcción a ser realizada ubican en un Distrito de Zonificación RT-00, en una zona de interés turístico, lo que implica que le asiste la razón al recurrente. La celebración de la vista pública administrativa es una obligación de A.R.P.E. antes de conceder estas variaciones.

### III

Procede que examinemos el segundo señalamiento de error. En el mismo, sostiene el recurrente que A.R.P. E. erró al conceder una variación con materiales permanentes, ya que la segregación que se autorizó estaba condicionada a que se proveyera de infraestructura por el proponente de la segregación y que estaba sujeta a las restricciones legales por la colindancia con la zona marítimo-terrestre.

La lotificación simple es aquélla en la cual ya estén construidas todas las obras de urbanización, o que éstas resulten ser muy sencillas. 23 L.P.R.A. sección 71b (i). Si bien es cierto que A.R.P.E. autorizó la segregación aún cuando el señor De Jesús no había provisto los *"solares"* de servicios de agua, luz y calle, también queda demostrado que el término del recurrente para oponerse a esta decisión de la agencia, ya había transcurrido. La decisión de A.R.P.E. sobre la aprobación de la segregación fue el 3 de abril de 1995. En dicha aprobación, la agencia claramente dispuso que la parte adversamente afectada por una resolución u orden parcial o final, podrá, dentro del término de veinte (20) días desde el archivo en autos de su notificación, presentar una moción de reconsideración de la resolución u orden ante la Secretaría de la oficina correspondiente que emitió la decisión. Sección 3.15 L.P.A.U., 3 L.P.R.A. sección 2165. Si no se radica la reconsideración, la parte interesada podrá optar por radicar directamente una apelación ante la Junta de Apelaciones sobre Construcciones y Lotificaciones, dentro del término de treinta (30) días naturales, contados a partir de la fecha del depósito en el correo de la notificación de la determinación de la Administración de Reglamentos y Permisos. 23 L.P.R.A. sección 72c (a). Por tanto, el recurrente no puede exponer este planteamiento debido a que el tiempo transcurrió. Ante esta circunstancia, este señalamiento de error constituye un ataque colateral a la decisión que tomó A.R.P.E. al respecto en 1995. El señor Alvarez no se opuso a la aprobación en su momento; por consiguiente no lo puede alegar en este recurso que versa sobre otra controversia. Ver *Seijo v. Mueblerías*

*Mendoza,* 106 D.P.R. 491 (1977).

Cabe señalar que A.R.P.E. expide autorizaciones para las lotificaciones y entre otras normas se guía por la conveniencia de evitar subdivisiones en áreas que no estén listas para tales desarrollos debido a la falta de instalaciones tales como calles o carreteras con capacidad adecuada, agua, luz y alcantarillados. 23 L.P.R.A. sección 71h (a). Alega el recurrente que la compraventa del solar no era válida debido a que no se proveyeron estos servicios. No le asiste razón. Primero no existe prueba de la no provisión de tales servicios. Segundo, si éstos no se facilitaron, el recurrente no puede hacer esta alegación debido a que él no adquirió la propiedad de esta controversia y, por ende, no es la persona afectada; es decir, carece de legitimación activa. Todo pleito se tramitará a nombre de la persona que por ley tenga el derecho que se reclama. 32 L.P.R.A. Ap. III, R. 15.1.

Ahora analicemos la alegación de que el anteproyecto está restringido por la zona marítimo-terrestre. Esta zona se define como el espacio de las costas de Puerto Rico que baña el mar en su flujo y reflujo, en donde son sensibles las mareas, y mayores olas en los temporales en donde las mareas no son sensibles, e incluye los terrenos ganados al mar y las márgenes de los ríos hasta el sitio en que sean navegables o se hagan sensibles las mareas; y el término sin condicionar significa la zona marítimo-terrestre de Puerto Rico. Ley Núm. 151 de 28 de junio de 1968, 23 L.P.R.A. sección 2103. Cabe señalar que la Constitución del Estado Libre Asociado de Puerto Rico dispone que será política pública del Estado Libre Asociado la más eficaz conservación de sus recursos naturales, así como el mayor desarrollo y aprovechamiento de los mismos para el beneficio general de la comunidad. Const. E.L.A., art. IV, sección 19. El Departamento de Recursos Naturales y Ambientales será responsable de implementar en lo que respecta a la fase operacional, la política pública del Estado Libre Asociado, en lo que respecta a esta citada sección. Art. 3 de la Ley Núm. 23, de 20 de junio de 1972, 3 L.P.R.A. sección 153.

Luego de lo anterior, nos toca discutir las variaciones que presenta el anteproyecto y su relación con la zona marítimo-terrestre. El solar objeto de esta controversia ubica en un Distrito de Zonificación RT-00. La Subsección 34.01 del Reglamento de Zonificación Núm. 4 dispone que este distrito es uno residencial y que se establece para promover el desarrollo ordenado y estético y para clasificar terrenos en las zonas de interés turístico. Tomando en cuenta todo lo anterior, este anteproyecto de construcción presenta una serie de variaciones. En primer lugar, la Subsección 34.08 del Reglamento de Zonificación Núm. 4 dispone que en un Distrito RT-00 se requerirá un patio delantero con un fondo no menor de 5 metros. El proyecto presenta una variación de 3.5 metros en el patio delantero requerido, ya que el mismo es de 1.5 metros en la parte que se propone la construcción de una escalera de acceso a un segundo piso y en la parte frontal de la estructura.

En lo relacionado al Reglamento de Zonificación de la Zona Costanera y de Accesos a las Playas y Costas de Puerto Pico que es el Reglamento Núm. 17, la Subsección 3.05 dispone que se requiere que se dedique para uso público una faja de terrenos de veinte (20) metros de ancho mínimo, paralela y medida desde la zona marítimo-terrestre (M-T). En adición, no se erigirán estructuras permanentes en una faja de terrenos de treinta (30) metros de ancho, contigua a la anterior. El anteproyecto no observa la faja de veinte (20) metros que debe ser dedicada a uso público. Además, se propone la construcción de estructuras de carácter permanente dentro de la faja de treinta (30) metros. El fondo del solar perpendicular a la zona marítimo-terrestre tiene 26.27 metros, así que la faja de separación que se requiere es menor que el fondo del solar. A su vez, la Subsección 8.01 de dicho Reglamento dispone que la estructura observará un retiro de la Zona M-T de 2.5 veces la altura del edificio, pero nunca menor de los cincuenta (50) metros establecidos en la Subsección 3.05 del Reglamento. El proyecto presenta una altura de 5.49 (cinco punto cuarenta y nueve) metros, por lo que se requiere una separación no menor de cincuenta (50) metros de la Zona M-T, y se propone una separación menor, ya que ésta sería de 13.725 metros. El solar tiene 26.27 metros de fondo, pero la separación que observará la estructura no se conoce debido a que no se sometió el estudio del deslinde de la zona marítimo-terrestre en dicha área.

Además, la Subsección 8.04 de dicho Reglamento establece que de solicitar una concesión, ésta deberá ser acompañada de un estudio de sombras donde se demuestre que el área dentro de la zona marítima no recibirá sombra por más de una hora en cualquier día del año durante las horas de 10:00 A.M. a 4:00 P.M. El recurrido no solicitó variación, ni sometió el estudio de sombra que demuestre que cumplió con la disposición.

Por último, la Subsección 24.02 del mencionado Reglamento establece que todo proyecto que se encuentre adyacente o cercano a una costa, playa o litoral lacuestre, será necesario que someta un plano de mensura debidamente certificado por el Departamento de Recursos Naturales, en el cual aparezca el deslinde de la Zona M-T. El recurrido no sometió este plano de mensura y, por tanto, se desconoce el límite de esta zona.

A la luz de estas circunstancias particulares, es claro que A.R.P.E. abusó de su discreción al emitir la resolución que autorizó el anteproyecto de construcción. El recurrido no sometió el plano de mensura, ni el estudio de sombras, que son documentos indispensables para que la Agencia pueda conceder las variaciones. Hay que conocer el deslinde de la propiedad para tener conocimiento de donde termina la zona marítimo-terrestre y así establecer si se construye dentro de la faja de separación. Estas deficiencias impedían que A.R.P. E. aprobara válidamente este anteproyecto.

## IV

Evaluemos el tercer señalamiento de error. Alega el recurrente que A.R.P.E erró al conceder las variaciones por el fundamento de que, de lo contrario, el solar sería irrazonablemente afectado por la reglamentación.

El Artículo 10 de la Ley Núm. 76, 23 L.P.R.A. sección 711, dispone que el Administrador podrá dispensar del cumplimiento de los requisitos de los Reglamentos de Planificación de conformidad con lo establecido en los mismos, en casos donde la aplicación literal de sus disposiciones resultare en la prohibición o restricción irrazonable del disfrute de una pertenencia o propiedad y se demuestre a su satisfacción que dicha dispensa aliviará un perjuicio claramente demostrable, pudiendo imponer las condiciones que el caso amerite para el beneficio del interés público. En *Quevedo Segarra v. J.A.C.L supra*, pág. 93, el Tribunal Supremo expresó que la variación tiene el propósito de atenuar el rigor del reglamento permitiendo el uso prohibido cuando se demuestra que, debido a circunstancias especiales, la aplicación de las restricciones puede resultar irrazonable y causar perjuicios al dueño. La Subsección 27.04 del Reglamento de Zonificación de la Zona Costanera indica, entre otros, que no podrá autorizarse una variación, a menos que, debido a las circunstancias excepcionales o extraordinarias, la aplicación literal de ciertos requisitos específicos de este Capítulo resultaría en una dificultad práctica o en un perjuicio innecesario no creado o atribuible al dueño de la propiedad; además, que la variación es necesaria para la preservación y el disfrute de un derecho de propiedad.

El recurrido presentó un anteproyecto que refleja un uso residencial el cual no varía el uso del Ditrito RT-00; sólo se presentan variaciones a varios requisitos de los Reglamentos aplicables, y el mismo es viable al uso de la zona. Una vez el recurrido someta los documentos que no presentó con su proyecto, como el plano de mensura y el estudio de sombras, y se sigan otros trámites, es posible la concesión de las variaciones debido a que la no concesión podría resultar en un perjuicio innecesario no creado o atribuible al recurrido.

## V

Finalmente, el recurrente señala como cuarto error que A.R.P.E. no aplicó la doctrina del daño autoinfligido, debido a que inició la construcción con hechos falsos y en violación a las restricciones legales de la zona marítimo-terrestre. Esta doctrina se refiere a cuando el promovente, conociendo las limitaciones impuestas por el requisito de zonificación, se coloca voluntariamente en una posición que le causa un perjuicio irrazonable. *T-JAC v. Caguas Centrum, supra; Asoc. CD Octubre v. J.A.C.L., supra*, pág. 334. Debido a que en el caso ante nuestra consideración era necesario que se sometieran los documentos anteriormente señalados y,

por ende, no procedía la concesión de las variaciones, no vamos a exponer nuestra posición respecto a este señalamiento de error.

## VI

Por los fundamentos antes expuestos, se expide el auto, revocando la resolución recurrida y se devuelve el recurso a la Administración de Reglamentos y Permisos para que el recurrido presente los documentos necesarios y se celebre la correspondiente vista pública administrativa.

Lo acordó y manda el Tribunal y lo certifica la Subsecretaria General.

Gladys E. Ortega Ramírez
Subsecretaria General