*1052 TEXTO COMPLETO DE LA SENTENCIA
Comparece ante nosotros el señor Juan R. Alméstica Pizarro (Sr. Alméstica) para que revoquemos el dictamen de la Junta de Apelaciones sobre Construcciones y Lotificaciones (JACL), el cual fue notificado el 1 de agosto de 2008. Mediante esta resolución, la agencia dejó sin efecto la decisión de la Administración de Reglamentos y Permisos (ARPE). Consecuentemente, la JACL permitió la variación de la zonificación R-3 de la propiedad del señor Kenneth Quiñones (Sr. Quiñones), para que éste pudiera operar un taller de mecánica.
Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.
I
El caso de autos tuvo su juicio en una investigación realizada por ARPE. De la misma surgió que el Sr. Quiñones operaba un taller de mecánica en la parte posterior de su residencia, la cual está ubicada en la Avenida Boulevard, Urbanización Levittown Lakes, Toa Baja. Cabe señalar que la parte frontal de la residencia se encuentra en el Paseo Camarón de la misma urbanización. Ambas áreas están clasificadas como distrito de zonificación R-3.
Durante la investigación, ARPE no pudo comprobar que dichas facilidades fueran construidas con permiso de construcción, ni que el Sr. Quiñones tuviera permiso de uso para poder operar el negocio. A raíz de dicho proceso, el Sr. Quiñones solicitó ante la ARPE el permiso de uso correspondiente.
Una vez celebradas las respectivas vistas públicas, ARPE emitió un informe, en el que, a pesar de que las determinaciones de hechos resultaban favorables a la solicitud de Sr. Quiñones, se denegó el permiso de uso. Los fundamentos medulares para la denegatoria estribaban en que el Reglamento de Zonificación de Puerto Rico (Reglamento de Planificación Núm. 4 de la Junta de Planificación), Reglamento 6211, 5 de noviembre de 2000, (Reglamento de Zonificación) prohíbe el uso solicitado y en que el Sr. Quiñones no demostró la inexistencia de otras alternativas de uso para el solar.
Inconforme, el Sr. Quiñones apeló la decisión ante la JACL. Entre otras cosas, adujo que el uso solicitado es compatible con la actividad que se lleva a cabo en la Ave. Boulevard de Toa Baja, ya que esta zona es mayormente comercial. [1] Que durante la operación del negocio se observan las medidas de seguridad necesarias y que el mismo se maneja de forma juiciosa para no afectar el vecindario.
Luego de varios trámites, la JACL celebró vista, en la que todas las partes comparecieron con sus respectivas representaciones legales. Como opositor compareció el Sr. Alméstica. Aquilatada la prueba presentada, el foro administrativo apelativo revocó la decisión de ARPE y, consecuentemente, autorizó el permiso de uso sujeto a que se eviten sonidos que contaminen el ambiente. Las razones primarias para su decisión fueron las siguientes:

*1053
“La propiedad objeto de esta apelación fue adquirida con el propósito de dedicarla al uso propuesto, ya que la parte apelante posee otra propiedad con propósitos residenciales, por lo que la denegación del permiso solicitado resultaría precisamente en la confiscación del disfrute que la mencionada sección intenta evitar.

En atención a los mencionados factores que deberán tomarse en cuenta puede concluirse que la variación solicitada puede considerarse por ser la misma la necesaria para asegurar tal uso, ya que el apelante es mecánico autorizado y licenciado para ejercer como tal y la razón para adquirir la propiedad en cuestión fue precisamente dedicarla al uso propuesto, no es viable considerar otras alternativas para salvar el problema presentado.”
Insatisfecho, el Sr. Alméstica solicitó reconsideración, la cual fue acogida por el foro administrativo. Sin embargo, la solicitud fue denegada el 23 de septiembre de 2008, y notificada el mismo día.
Inconforme aún, recurrió ante este foro y presentó como único error el haberse autorizado el permiso de uso. Alegó que el Reglamento de Zonificación prohíbe el uso que le pretende dar el Sr. Quiñones a la estructura en controversia. Además, indicó que una persona que adquiere una propiedad en una zona no comercial no puede luego variar su uso simplemente porque al momento de adquirirla su intención era utilizarla con un propósito distinto al que puede ejecutarse en esa zona.
El Sr. Quiñones compareció ante nosotros y además de replicar a la postura del Sr. Alméstica, solicitó la desestimación del recurso. Su planteamiento reside en que:

“]) el Sr. Alméstica incumplió con la Regla 59(E) del Reglamento del Tribunal de Apelaciones, 4 L.P.R.A. Ap. XXII-B, R. 59(E), ya que alegadamente no presentó documentos necesarios que forman parte del expediente;

2) que la solicitud de reconsideración fue notificada a las partes 3 días después de haberse presentado ante la Junta de Apelaciones. Expresó que esta situación tuvo el efecto de que la reconsideración no se perfeccionara, por lo que el término para solicitar revisión judicial no se interrumpió. Infirió que este hecho tuvo como resultado la presentación tardía del recurso; y

3) que el Sr. Quiñones notificó el recurso de revisión, mediante correo certificado, un día después de haberlo presentado ante el Tribunal de Apelaciones. Señaló que dicho proceder contravino el Reglamento del Tribunal de Apelaciones, ya que la notificación tiene que ser prácticamente simultanea y efectuarse el mismo día en que se presenta el recurso. ”

Con el beneficio de la comparecencia de las partes, resolvemos.
II
Ante una alegación de falta de jurisdicción debemos resolver este aspecto en primer lugar.
Uno de los argumentos para la desestimación es el alegado incumplimiento con la Regla 59(E) del Reglamento del Tribunal de Apelaciones, supra. Indicó que el Sr. Quiñones no presentó documentos necesarios que forman parte del expediente administrativo. No obstante, al revisar los autos nos percatamos que los documentos necesarios para que este foro pueda adjudicar la controversia fueron debidamente presentados.
Como anejos del recurso de revisión se encuentran la Resolución de JACL, la moción de reconsideración, la *1054 orden administrativa, donde acoge la solicitud y la resolución de la JACL que resuelve la reconsideración. Además, podemos señalar que el Sr. Quiñones subsanó cualquier posible omisión de documentos, ya que éste presentó las alegaciones de las partes ante la JACL, y la decisión de ARPE, entre otros.
Por otro lado, la propia Regla 59(E) del Reglamento del Tribunal de Apelaciones, supra, categóricamente expresa que la omisión de incluir los documentos del apéndice no será causa de desestimación del recurso. Consecuentemente, el Sr. Quiñones no tiene razón en este planteamiento.
En su segundo argumento señaló que este foro carecía de jurisdicción por que el término para recurrir en revisión judicial no fue interrumpido. Su fundamento radicó en que como la solicitud de reconsideración no les fue notificada el mismo día de su presentación, sino 3 días después, éste nunca se perfeccionó. Tampoco le asiste la razón.
Como se sabe, desde Febles v. Romar, 159 D.P.R. 714 (2003), se resolvió que el término para notificar una moción de reconsideración —en el ámbito administrativo — , es uno de cumplimiento estricto y que la notificación a las partes tiene que efectuarse dentro del término de 20 días para solicitar reconsideración conforme lo establece la sec. 3.15 de la Ley Núm.170 del 12 de agosto de 1988, según enmendada, 3 L.P.R.A. see. 2165, mejor conocida como la Ley de Procedimiento Administrativo Uniforme.
En el presente caso, la resolución de JACL fue notificada el 1 de agosto de 2008. Es a partir de esta fecha que comienza a decursar el término para solicitar reconsideración y notificarla, por lo que éste vencía el 21 de agosto de 2008. De los documentos se desprende que el Sr. Alméstica solicitó reconsideración el 18 de agosto de 2008 y la notificó a las partes el 21 de agosto de 2008.
Conforme a este tracto procesal, resulta incuestionable que a pesar de que la notificación se verificó 3 días después de haberse presentado la reconsideración, ésta se realizó dentro del término establecido por ley.
El tercer y último señalamiento para desestimar el recurso versa sobre la alegada falta de notificación oportuna del recurso de revisión judicial. Aduce que como el recurso no le fue notificado el mismo día en que éste se presentó, este Tribunal carece de jurisdicción. Este planteamiento también es irrazonable y errado en derecho.
La Ley de Procedimiento Administrativo Uniforme es clara en cuanto a esta controversia y en su see. 4.2, supra, 3 L.P.R.A. sec. 2172, se dispone lo siguiente:

“Una parte adversamente afectada por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente podrá presentar una solicitud de revisión ante el Tribunal de Apelaciones, dentro de un término de treinta (30) días contados a partir de la fecha del archivo en autos de la copia de la notificación de la orden o resolución final de la agencia o a partir de la fecha aplicable de las dispuestas en la see. 2165 de este título cuando el término para solicitar revisión judicial haya sido interrumpido mediante la presentación oportuna de una moción de reconsideración. La parte notificará la presentación de la solicitud de revisión a la agencia y a todas las partes dentro del término para solicitar dicha revisión. La notificación podrá hacerse por correo.

En Montañez v. Policía de Puerto Rico, 150 D.P.R. 917, 920 (2000), el Tribunal Supremo nuevamente enunció la norma establecida en Olmeda Díaz v. Dep. de Justicia, 143 D.P.R. 596 (1997). En las dos instancias se resolvió que la solicitud de revisión tiene que ser notificada a todas las partes, y a la agencia concerniente, dentro del plazo dispuesto por ley para solicitar revisión judicial. El incumplimiento con dicho requisito priva al Tribunal de Apelaciones de jurisdicción.
Como indicamos, la decisión de la cual se recurre fue notificada el 1 de agosto de 2008 y la decisión en *1055 cuanto a la reconsideración solicitada fue notificada el 23 de septiembre de 2008. El recurso que hoy resolvemos fue presentado el 20 de octubre de 2008 y el mismo se le notificó a las partes el 21 de octubre de 2008. Estos hechos demuestran que el planteamiento del Sr. Quiñones es uno errado. Vimos que el presente recurso fue notificado oportunamente y conforme a derecho.
Conforme a todo lo anterior, resulta incuestionable concluir que este Tribunal tiene jurisdicción para dilucidar la controversia de epígrafe.
III
Es norma claramente establecida en nuestro ordenamiento jurídico que los tribunales tienen autoridad para revisar las decisiones de las agencias administrativas. Dicha autoridad fue investida en el Tribunal de Apelaciones por la Sección 4.2 de la Ley Num. 170 del 12 de agosto de 1988, según enmendada, conocida como la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico (L.P.A.U.), 3 L.P.R.A.§ 2172.
La revisión judicial de las decisiones administrativas comprende tres aspectos: (1) la concesión del remedio apropiado, (2) las determinaciones de hechos, y (3) las conclusiones de derecho del organismo administrativo. P.R.T.C. v. J. Reg. Tel. de P.R., 151 D.P.R. 269, 281 (2000); Misión Ind. P.R. v. J.P., 146 D.P.R. 64, 129 (1998).
El fin perseguido por la revisión judicial es la protección de los ciudadanos sobre posibles decisiones arbitrarias por parte de las agencias administrativas; procurar que su desempeño sea conforme a la autoridad brindada por su ley orgánica; y para velar porque se le brinden a los ciudadanos garantías constitucionales cuando éstas intervienen con sus derechos o con su propiedad. Así lo expresó el Tribunal Supremo de Puerto Rico en Assoc. Ins. Agencies Inc. v. Com. Seg. P.R., 144 D.P.R. 425, 435 (1997):

"La función principal de la revisión judicial de las determinaciones de las agencias con poderes adjudicativos es asegurarse que las agencias actúen dentro del marco de la facultad delegada por la Asamblea Legislativa y que cumplan con los preceptos constitucionales particularmente los dictados por el debido proceso de ley. El control judicial de la actuación administrativa garantiza que los ciudadanos tengan un foro a donde recurrir para vindicar sus derechos y obtener un remedio frente a los organismos administrativos. ”

A pesar de que los tribunales tienen la autoridad de revisar las decisiones administrativas, éste es un poder limitado. La propia ley (L.P.A.U.) como la jurisprudencia interpretativa ha establecido los contornos o límites de la revisión judicial. La sección 4.5 de la L.P.A.U., supra, 3 L.P.R.A. § 2175, nos indica que las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo.
Sin embargo, la misma disposición de ley otorga un tratamiento distinto a las conclusiones de derecho. Como se sabe, éstas son revisables en su totalidad. See. 4.5 de la L.P.A.U., supra. Ello no implica que los tribunales pueden, injustificadamente, rechazar las conclusiones de derecho de las agencias administrativas e imponer su criterio. Otero v. Toyota, 163 D.P.R. 716, 729 (2005). De ordinario, los tribunales conceden gran peso y deferencia a las interpretaciones que dichos organismos realizan de las leyes que les corresponde administrar. Por lo tanto, nuestra jurisprudencia reiteradamente ha resuelto que la revisión judicial se circunscribe a determinar si la agencia actuó arbitraria o ilegalmente o en forma tan irrazonable que su actuación constituyó un abuso de discreción. Rivera Concepción v. A.R.P.E., 152 D.P.R. 116, 122 (2000). Esta deferencia está cimentada en dos fundamentos, a saber: 1) las agencias administrativas son las que cuentan con experiencias y conocimientos altamente especializados sobre los asuntos que se le. encomiendan', y que 2) éstas constituyen instrumentos necesarios para la interpretación de la ley. ID, a la pág. 123; Empresas Toledo v. Junta, res. el 31 de agosto de 2006, 168 D.P.R. _ (2006), 2006 J.T.S. 147; Hernández v. Centro Unido, res. el 10 de agosto de 2006, 168 D.P.R. _ (2006), 2006 J.T.S. 140; P.R.T.C. v. J. Reg. Tel. de P.R., supra, a la pág. 283; Misión Ind. P.R. v. J.P., supra, alas págs. 132-133.
*1056 Es de señalar que la norma antes explicada también se ha extendido al ámbito de la interpretación de los reglamentos y de las leyes que las agencias administran. López v. ELA, res. el 25 de enero de 2008, 173 D.P.R. _, 2008 J.T.S. 29. La jurisprudencia ha resuelto que las interpretaciones que de una ley realiza la agencia, encargada de velar por su cumplimiento, no tienen que ser la única razonable. Sin embargo, incluso en casos dudosos, la interpretación de la agencia merece la referida deferencia. Se aclaró que lo importante o esencial es que la determinación de la agencia sea una razonable y no que haya logrado la determinación correcta del hecho o los hechos en controversia. Hay que comentar'que esta deferencia no implica que los foros apelativos abdiquemos a nuestro deber de revisar las decisiones tomadas por las agencias administrativas. Es norma reiterada que estamos autorizados a intervenir con sus dictámenes cuando la interpretación de la agencia no armoniza con el fundamento racional o fin esencial de la ley y la política pública que la inspira. Bajo estos escenarios, el foro apelativo puede sustituir el criterio de la agencia por el suyo. P.R.T.C. v. J. Reg. Tel. de P.R., supra, a la pág. 283; Misión Ind. P.R. v. J.P., supra, a la pág. 133; Otero v. Toyota, supra, a la pág. 729.
Recordemos que la norma de deferencia no es una absoluta, ya que los tribunales apelativos están autorizados a intervenir y revisar si la agencia en cuestión: (1) erró al aplicar la ley; (2) actuó arbitraria, irrazonable o ilegalmente, o (3) lesionó derechos constitucionales fundamentales. Empresas Toledo v. Junta, supra; P.C.M.E. v. J.C.A., 166 D.P.R. 599, 617 (2005).
De un exhaustivo análisis de los autos, concluimos en los méritos del asunto que la JACL no cometió error en la apreciación de la prueba y en la interpretación que de ésta hiciera, por lo que no debemos intervenir con sus determinaciones de hechos y conclusiones de derecho.
IV
Por disposición de ley, la Junta de Planificación es el organismo responsable de guiar el desarrollo integral de Puerto Rico de modo que fomente en la mejor forma la salud, la seguridad, el orden, la convivencia, la prosperidad, la defensa, la cultura, la solidez económica y el bienestar general de los actuales y futuros habitantes del país. Art. 4 de la Ley Núm. 75 del 24 de junio de 1975, 23 L.P.R.A. sec. 62(c). Como se sabe, éste es un asunto complejo que va de la mano con la convivencia social y la economía de muchas zonas especiales del país. Ello atañe al adecuado desarrollo urbano, la correcta utilización de nuestros terrenos y recursos naturales. Mun. de San Juan v. J.C.A., 152 D.P.R. 673, 700 (2000).
A los fines de que dicho organismo pueda cumplir con esta misión, se le confirió la facultad de adoptar reglamentos que sirvan de guía y le permitan controlar el uso y desarrollo de los terrenos y edificios públicos y privados, tanto en áreas urbanas como rurales. Art. 16 de la Ley Núm. 75, supra, 23 L.P.R.A. sec. 62(o). Por esta razón se aprobó Reglamento de Zonificación, supra.
El reglamento antes mencionado define la zonificación como aquel mecanismo mediante el cual se establecerán o fijarán los usos adecuados para todos los terrenos del país e islas adyacentes que le pertenecen. Reglamento de Zonificación, supra, a la pág. 1.
Una de las categorías de distritos de zonificación es la denominada R-3. Conforme al Reglamento de Zonificación, supra, ésta se considera residencial general con una cabida no menor de 300 metros cuadrados, donde se permite la construcción de viviendas. Los usos autorizados para el distrito de zonificación R-3 son los siguientes:

“1. Casas de una o dos familias.

2. Casas en hilera y casas patio de acuerdo con lo establecido en la Secciones 64.00 y 65.00 de este Reglamento.

*1057
3. Centros de cuidado para niños y envejecientes.

4. Desarrollos extensos de conformidad a las Secciones 79.00, 80.00 y 81.00 de este Reglamento.

5. Estacionamientos en solares o estructuras construidas para esos propósitos, siempre que se cumpla con lo establecido para el diseño de áreas de estacionamiento en la Subsección 74.02 de este Reglamento.

6. Hospedajes especializados.

7. Otros usos de acuerdo con lo establecido en la Sección 84.00 de este Reglamento. ” See. 1302 del Reglamento de Zonificación de Puerto Rico, supra, pág. 73.
No obstante, a pesar de que los terrenos cuentan con su respectiva clasificación de distrito de zonificación, el reglamento en cuestión permite, en determinadas ocasiones, la variación de éstas. Esta disposición tiene el propósito de evitar que la aplicación literal de los requerimientos establecidos en dicho reglamento en determinadas situaciones muy especiales, resultare en una confiscación del disfrute de la propiedad. Sección 82.02 del Reglamento de Zonificación, supra.
La jurisprudencia, al expresarse sobre este tema, determinó que las variaciones de uso constituye una autorización para utilizar la propiedad de una manera prohibida. Añadió que ésta sólo se debe conceder, vía excepción, para evitar perjuicios a una propiedad cuándo se pruebe que, debido a circunstancias extraordinarias, la aplicación rígida de los requisitos reglamentarios sería una irrazonable, perjudicaría a su propietario y equivaldría a una incautación de la propiedad. Empresas Ferrer Inc. v. A.R.P.E., res. el 2 de octubre de 2007, 172 D.P.R. _, 2007 J.T.S. 181.
Es norma reiterada que las variaciones sólo se deben conceder en circunstancias muy particulares y extraordinarias y para evitar perjuicios a la propiedad. Se precisó que la autorización irrestricta de las variaciones destruiría el propósito de la planificación urbana y se trastocarían eventualmente las características propias de un distrito. Mun. de San Juan v. J.C.A., supra, a la pág. 714.
En Mun. de San Juan v. Bosque Real, S.E., 158 D.P.R. 743, 762 (2003), la jurisprudencia nuevamente punteó que para que la Junta de Planificación pueda autorizar una variación en uso es necesario que el propietario del predio demuestre que ninguno de los usos que están permitidos en el distrito es viable en la propiedad desde el punto de vista económico o físico. Es decir, el promovente debe probar que su propiedad está particularmente afectada por una reglamentación que resulta innecesariamente gravosa para el lugar específico en que enclava. Véase además Asoc. Res. Park Side, Inc. v. J.P., 139 D.P.R. 349, 356 (1995).
El reglamento aquí en discusión establece que las variaciones permitidas se circunscriben a los usos que tolera el distrito. Igualmente, establece los factores o criterios a examinar para determinar si se autoriza o no la variación solicitada, a saber:

“1. La magnitud de la variación es la necesaria para asegurar la viabilidad del uso permitido y no es viable considerar otras alternativas para salvar el problema presentado.

2. La variación solicitada no afectará adversamente, entre otros, los siguientes factores:

a. La disponibilidad de la infraestructura

b. El contexto en el que ubica

*1058 c. El ambiente de la calle

d. La seguridad y tranquilidad de los vecinos

3. Se logra un desarrollo urbano más compacto.

4. La densidad o intensidad solicitada no lleva a convertir el distrito en otro.

5. La variación solicitada es cónsona con los propósitos de la disposición reglamentaria que se solicita sea modificada, así como con la política pública. Sec. 82.05 del Reglamento de Zonificación, supra. ”
Como queda antes dicho, en la vista pública ante A.R.P.E. quedó establecido que en el lugar en que ubica el inmueble en litigio, Avenida Boulevard, Urb. Levittown Lakes, Toa Baja, por un lado y el Paseo Camarón por el otro, desde hace tiempo el área se utiliza para propósitos comerciales, cónsonos a la actividad comercial interesada por el Sr. Quiñones. La propia A.R.P.E. determinó que la Ave. Boulevard es mayormente comercial; no obstante, todavía tiene una zonificación de R-3 en los mapas de zonificación.
Por ello, el informe que A.R.P.E. descartó para denegar el permiso era totalmente favorable al Sr. Quiñones.
El asunto no es tema nuevo. El ordenamiento territorial lo ha considerado y estudiado muchas veces y a esta fecha ha establecido una política pública, cónsona al informe favorable de A.R.P.E. precisamente debido a que:

"La variación solicitada no afecta adversamente la disponibilidad de la infraestructura, el contexto en que ubica, ni el ambiente de la calle, ya'que el ambiente residencial de la Avenida Boulevard se ha transformado al punto de no ser representativo de la propia zonificación conque se clasifica por existir un comportamiento mayormente comercial.

La seguridad de los vecinos no se ve afectada por el uso propuesto, ya que no existe mayor peligro que el que pueda representar una estructura utilizada como vivienda en el mismo sector..”. (Ap. Anejo 1, págs. 5-6)
El dictamen de la Junta de Apelaciones, aquí recurrido, está plenamente sostenido por la totalidad del récord administrativo y no debemos intervenir.
V
Por los fundamentos que preceden, confirmamos la decisión de la Junta de Apelaciones sobre Construcciones y Lotificaciones. Consecuentemente, se mantiene en vigor la decisión de la Junta de Apelaciones y admite la variación de uso solicitada por el Sr. Quiñones.
Así lo pronunció y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.
Leda. María E. Pérez Ortiz Secretaria Tribunal de Apelaciones
ESCOLIO 2009 DTA 54

1. Señalamos que ARPE determinó que la Ave. Boulevard es mayormente comercial.