ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE APELACIONES
**PANEL ESPECIAL**

| | | |
|---|---|---|
| **JOSÉ LUIS RIVERA HERNÁNDEZ.** <br> RECURRENTE(S) <br><br> V. <br><br> **DEPARTAMENTO DE DESARROLLO ECONÓMICO Y COMERCIO** <br> RECURRIDA(S) <br><br><br> **OFICINA DE GERENCIA DE PERMISOS** <br> AGENCIA RECURRIDA | **KLRA202300024** | ***Revisión de Decisión Administrativa*** <br> procedente de la Oficina de Gerencia de Permisos <br><br> Caso Núm. **2021-361148-SDR-010393** <br><br> Sobre: Consulta de ubicación; Segregación |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Juez Barresi Ramos y la Jueza Rivera Pérez.

*Barresi Ramos*, juez ponente.

# S E N T E N C I A

En San Juan, Puerto Rico, hoy día 29 de febrero de 2024.

Comparece ante este Tribunal de Apelaciones, el señor **JOSÉ LUIS RIVERA HERNÁNDEZ** (señor **RIVERA HERNÁNDEZ**) mediante *Recurso Revisión* instado el 17 de enero de 2023. En su escrito, nos solicita que revisemos la *Resolución* dictada el 29 de agosto de 2022 por la **Oficina de Gerencia de Permisos** (**OGPE**).[1] Mediante esta determinación, la Junta Adjudicativa de la **OGPe** tomó un acuerdo de *No Favorable* a la Consulta de Ubicación presentada al amparo del caso 2021-361148-CUB-004273.

Exponemos el trasfondo fáctico y procesal que acompaña a la presente controversia.

---

[1] Esta decisión administrativa fue notificada y archivada en autos el 29 de agosto de 2022. Véase Apéndice del *Recurso Revisión,* págs. 12- 20.

Número Identificador:  SEN2024_____

**– I –**

El 15 de diciembre de 2021, el señor **RIVERA HERNÁNDEZ** presentó una *Solicitud de Consulta de Ubicación* ante la **OGPe**. Ello para la segregación de un solar (Lote A) en el cual ubica una estructura residencial; un solar de uso público (Lote B); y dejar un remanente, en una finca localizada en el barrio Garzas en el Municipio de Adjuntas.[2]

Se celebró una audiencia, mediante video conferencia, ante Oficial Examinador. No hubo comparecencia en oposición ni solicitud de intervención. Así las cosas, el 29 de agosto de 2022, la **OGPe** emitió la *Resolución* impugnada. En lo pertinente, señaló que la propiedad objeto de la solicitud "ubica en un distrito calificado como "Industrial Liviano" (I-L) conforme al Reglamento Conjunto para la Evaluación y Expedición de Permisos Relacionados al Desarrollo, Uso de Terrenos y Operación de Negocios, Reglamento Núm. 9233 del 2 de diciembre de 2020".[3] Expresó, además, "el crear dos lotes adicionales [al] llevar a cabo un uso residencial no constituiría el mejor uso de los terrenos, máxime en un lugar donde no abundan los terrenos con la calificación industrial". Añadió que "no se presentó ninguna de las circunstancias necesarias para la aprobación de una segregación vía variación".[4]

Posteriormente, el 16 de septiembre de 2022, el señor **RIVERA HERNÁNDEZ** presentó su *Solicitud de Moción de Reconsideración* aduciendo, entre otras cosas, que, a pesar de que el uso residencial

---

[2] El 10 de junio de 2019, el Municipio de Adjuntas expresó no tener objeción alguna a que se otorgue la autorización a la segregación. Véase Apéndice del *Recurso Revisión*, pág. 25.

[3] Es menester señalar que nuestro Tribunal Supremo declaró nulo el Reglamento Conjunto 2019 y el Reglamento Conjunto 2020. Sin embargo, estableció que tal determinación de nulidad tiene un efecto prospectivo. Es decir, la nulidad alcanzará solamente a los permisos que se otorguen después de ese proceder. De esa manera, todo permiso autorizado y expedido al amparo de los citados reglamentos, previo a la emisión de ese dictamen, deberán aceptarse como validos por toda la ciudadanía y agencias concernientes. Véase *Martínez Fernández v. Oficina de Gerencia de Permisos*, 2023 TSPR 75, 212 DPR ___. Véase Apéndice del *Recurso Revisión*, pág. 15.

[4] *Íd.*, págs. 18- 19.

no está permitido en el distrito IL en el que ubica la propiedad, la **OGPe** otorgó la autorización de servicio para uso residencial para cada planta del edificio mediante los casos número 2017-148522-ASE-003934 (enero de 2017) y 2017-155955-ASE-004167 (marzo de 2017).[5]

Días después, el 28 de septiembre de 2022, la solicitud de *Revisión Administrativa* fue acogida y mediante *Orden* decretada el 29 de septiembre de 2022 se pautó audiencia para 18 de octubre de 2022. En dicha audiencia, testificó el Agrimensor Cándido Sepúlveda Santiago quien declaró que realizó la mesura del solar a segregar y la finca en cuestión. En síntesis, aseguró que se sometieron todos los documentos y el solar a segregar de forma irregular es de 555 metros cuadrados con una estructura de dos (2) plantas de hormigón y bloques que se ha dedicado a vivienda. También, expresó que tiene servicio de agua potable y energía eléctrica por más de cuatro (4) años. Por su parte, el Departamento de Transportación y Obras Públicas (DTOP) y la Autoridad de Carreteras, otorgó su endoso al proyecto y recomendó la revisión para que se autorice la solicitud número 2021-361148-CUB-004273.

El 18 de noviembre de 2022, el Oficial Examinador redactó su *Informe de Vista* en la cual recomendó *ha lugar* la revisión y se autorizara la solicitud número: 2021-361148-CUB-004273.[6] Empero, el 15 de diciembre de 2022, la **OGPe** dictaminó su *Resolución de Revisión Administrativa* en la cual declaró *no ha lugar* la solicitud de revisión administrativa.[7]

---

[5] Véase Apéndice del *Recurso Revisión*, págs. 21- 22 y el inciso (c) de la pág. 26.
[6] *Íd.,* págs. 23 – 33.
[7] *Íd.,* págs. 1- 11.

Insatisfecho con el antedicho fallo, el 17 de enero de 2023, el señor **RIVERA HERNÁNDEZ** incoó el *Recurso Revisión* que nos ocupa. En su escrito, señaló los siguientes errores:

> Erró el Departamento de Desarrollo Económico y Comercio, Oficina de Gerencia de Permisos[,] al ignorar por completo de forma caprichosa, y en manifie[s]to abuso de discreción la recomendación del Oficial Examinador.
>
> Erró el Departamento de Desarrollo Económico y Comercio, Oficina de Gerencia de Permisos[,] al declarar no ha lugar la revisión soli[c]itada se[ñ]alando que no se autoriza [el] cambio de uso, cuando lo solicitado fue una autorización de segregación.

Así pues, el 20 de enero de 2023, este foro revisor decretó *Resolución* en la cual concedió un plazo perentorio de treinta (30) días para presentar su alegato en oposición al **Departamento de Desarrollo Económico y Comercio (DDEC)**. El 21 de febrero de 2023, la **OGPe** del **DDEC** presentó su *Oposición a Recurso de Revisión*.

Evaluado concienzudamente el expediente del caso; y contando con el beneficio de la comparecencia de ambas partes; nos encontramos en posición de resolver. Puntualizamos las normas de derecho pertinentes a las (s) controversia(s) planteada(s).

**– II –**

**– A –**

La *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU) provee un cuerpo de reglas mínimas para gobernar los procesos de adjudicación y reglamentación en la administración pública.[8] Su sección 4.1 instituye la *revisión judicial* por este Tribunal de Apelaciones de las determinaciones finales de las agencias.[9]

---

[8] Conocida como la Ley Núm. 38 de 30 de junio de 2017, según enmendada, 3 LPRA § 9601-9713; *SLG Saldaña-Saldaña v. Junta*, 201 DPR 615, 621 (2018).
[9] 3 LPRA § 9671.

La *revisión judicial* tiene como propósito limitar la discreción de las agencias y asegurarse de que estas desempeñen sus funciones conforme a la ley.[10] El criterio rector al momento de pasar juicio sobre una decisión de un foro administrativo es la razonabilidad de la actuación de la agencia.[11] Nuestra evaluación de la decisión de una agencia se circunscribe, entonces, a determinar si esta actuó de forma arbitraria, ilegal o irrazonable, o si sus acciones constituyen un abuso de discreción.[12]

No obstante, las decisiones de los organismos administrativos especializados gozan de una presunción de legalidad y corrección, por lo que, sus conclusiones e interpretaciones merecen gran consideración y respeto.[13] Por ello, al ejecutar nuestra función revisora, este Tribunal está obligado a considerar la especialización y experiencia de la agencia, distinguiendo entre cuestiones de interpretación estatutaria —sobre las que los tribunales son especialistas— y cuestiones propias de la discreción o pericia administrativa.[14]

Ahora bien, tal norma no es absoluta. Nuestro más alto foro ha instaurado que no podemos dar deferencia a las determinaciones administrativas que sean irrazonables, ilegales o contrarias a derecho.[15] Particularmente, concretó las normas básicas sobre el alcance de la revisión judicial al expresar:

> [L]os tribunales deben dar deferencia a las decisiones de una agencia administrativa, pero ésta cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. Es importante destacar que, si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos

---

[10] *Torres v. Junta Ingenieros,* 161 DPR 696, 707 (2004).
[11] *Otero v. Toyota*, 163 DPR 716 (2005).
[12] *JP, Plaza Santa Isabel v. Cordero Badillo,* 177 DPR 177, 187 (2009).
[13] *García Reyes v. Cruz Auto Corp.,* 173 DPR 870, 891 (2008).
[14] *OCS v. Point Guard Ins.*, 205 DPR 1005, 1028 (2020).
[15] *Torres Rivera v. Policía de PR,* 196 DPR 606, 625- 626 (2016).

procede que se valide la interpretación que realizó la agencia administrativa recurrida.

El alcance de la revisión de las determinaciones administrativas se ciñe a determinar lo siguiente: (1) si el remedio concedido por la agencia fue el apropiado; (2) si las determinaciones de hecho de la agencia están basadas en *evidencia sustancial* que obra en el expediente administrativo, y (3) si las conclusiones de derecho fueron las correctas.[16]

En cuanto a las determinaciones de hechos, estas serán sostenidas por los tribunales si están respaldadas por *evidencia sustancial* que surja del expediente administrativo considerado en su totalidad.[17] *Evidencia sustancial* es aquella relevante que una mente razonable puede aceptar como adecuada para sostener una conclusión.[18] Debido a la presunción de regularidad y corrección que cobija a las decisiones de las agencias administrativas, quien alegue ausencia de *evidencia sustancial* debe presentar prueba suficiente para derrotar dicha presunción.[19] Para ello "tiene que demostrar que existe otra prueba en el expediente que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración".[20] A esto se le conoce como la norma de la *evidencia sustancial,* con la cual se persigue evitar sustituir el criterio del organismo administrativo en materia especializada por el criterio del tribunal revisor.[21] Por lo tanto, aun cuando exista más de una interpretación razonable de los hechos, el tribunal debe dar

---

[16] Sección 4.5 de la LPAU, 3 LPRA § 9675; *Oficina de Ética Gubernamental v. Martínez Giraud,* 2022 TSPR 93, 210 DPR ____ (2022).
[17] *Rolón Martínez v. Supte. Policía,* 201 DPR 26, 36 (2018).
[18] *Otero v. Toyota, supra*, pág. 728.
[19] *Graciani Rodríguez v. Garaje Isla Verde,* 202 DPR 117, 128 (2019).
[20] *Gutiérrez Vázquez v. Hernández y otros,* 172 DPR 232, 244 (2007).
[21] *Pacheco v. Estancias,* 160 DPR 409, 432 (2003).

deferencia a la agencia, y no sustituir su criterio por el de esta.[22]

Por otro lado, las conclusiones de derecho de la agencia son revisables en todos sus aspectos, sin sujeción a norma o criterio alguno.[23] Aun así, debemos dar deferencia a las interpretaciones que los organismos administrativos hacen de las leyes y reglamentos que administran. Es por ello que, ante casos dudosos, donde pueda concebirse una interpretación distinta de estas leyes y reglamentos, la determinación de la agencia merece deferencia sustancial.[24]

En suma, si la decisión recurrida es razonable y se sostiene en la *evidencia sustancial* que obra en el expediente administrativo, procede su confirmación.[25] Por el contrario, los tribunales revisores podemos intervenir con la decisión recurrida cuando no está basada en *evidencia sustancial*, o cuando la actuación es arbitraria, irrazonable o ilegal, o cuando afecta derechos fundamentales.[26]

**– B –**

En este caso, al momento de la evaluación de la consulta de ubicación para la segregación ante **OGPe**, se encontraba vigente el *Reglamento Conjunto para la Evaluación y Expedición de Permisos Relacionados al Desarrollo, Uso de Terrenos y Operación de Negocios* (*Reglamento Conjunto*).[27]

Específicamente, en lo concerniente a nuestro caso, es preciso evaluar la Sección 6.1.15.2 mediante la cual se exponen expresamente los múltiples usos permitidos en Distrito I-L (Industrial Liviano). La referida sección expresa lo siguiente:

> a. Los usos a permitirse en este distrito serán compatibles con los propósitos [de este] y con las disposiciones de esta Regla.
> b. Los usos de industria liviana se diseñarán, construirán y operarán de manera que se protegerá la salud, la seguridad y el bienestar de los ocupantes de la propiedad a usarse y de

---

[22] *Íd.*
[23] *Rebollo v. Yiyi Motos,* 161 DPR 69, 77 (2004).
[24] *Torres Santiago v. Depto. Justicia,* 181 DPR 969, 1002 (2011).
[25] *García Reyes v. Cruz Auto Corp., supra,* pág. 893.
[26] *Capó Cruz v. Jta. Planificación et al.,* 204 DPR 581 (2020); *JP, Plaza Santa Isabel v. Cordero Badillo, supra.*
[27] Reglamento Núm. 9233 de 2 de diciembre de 2020 (Reglamento Conjunto de 2020).

las propiedades limítrofes y que no se menoscabe el suministro de luz y aire al edificio a ocuparse o usarse o a las propiedades vecinas o que no se aumente el peligro de fuego, ni se ocasione reducción o perjuicio a los valores de las propiedades establecidas en las áreas vecinas, asegurando la debida protección al interés público.
c. Los parámetros de diseño para los usos comerciales serán los del distrito C-1.

En conformidad con lo antes expuesto, la tabla 6.61 del *Reglamento Conjunto* implanta los usos permitidos en el Distrito Industrial Liviano. En esencia, los propósitos compatibles con el Distrito van dirigidos a comercios o servicios de naturaleza ligera. La aludida tabla enumera los siguientes: almacenes; cafeterías; centros de cuido; concesionarios de vehículos; farmacias; ferreterías; instituciones bancarias; gimnasios; escuelas vocacionales; estaciones de gasolina; oficinas; restaurantes; entre otros. Es decir, todos los usos permitidos van dirigidos al comercio y el intercambio de bienes y servicios.

Asimismo, la sección 6.3.2.1 instaura las disposiciones generales para evaluar al otorgar variaciones. A saber:

a. La variación en construcción, lotificación u otras no van dirigidas a alterar el uso permitido en el distrito, sino a dispensar al propietario del cumplimiento de uno o más de los requisitos que establece el Reglamento Conjunto, para la zona o distrito de calificación donde ubica o radica el inmueble o propiedad
b. La parte interesada que solicita una variación según antes señalado, al contrario de aquel que invoca la variación en uso, desea seguir utilizando la propiedad para el uso permitido por la reglamentación, pero necesita que se le exima de uno de los requisitos establecidos en el distrito de calificación para asegurar la viabilidad del uso permitido.
[...]

La sección 6.3.2.3 evalúa las condiciones al otorgar variaciones. En lo concerniente decreta:

a.      El Secretario Auxiliar de la OGPe, los Municipios Autónomos con Jerarquía de la I a la III, a los cuales se le haya delegado dicha facultad por medio del Convenio de Transferencia, autorizará variación en construcción, lotificación u otras para los usos que tolera el distrito tomando en consideración, entre otros, los siguientes factores:
    1. El solar tenga una condición particular que no permite que se cumpla con las disposiciones de este Reglamento.
    2. El solar tenga una ubicación especial o el uso particular confronta una dificultad práctica y amerita una consideración especial.

3. La variación solicitada no perjudica propiedades vecinas, la disponibilidad de infraestructura y el ambiente del vecindario.

4. No se afecte el uso agrícola, la productividad agrícola de los terrenos, los recursos naturales, históricos o culturales existentes, si alguno.

5. Para variar los parámetros de construcción sobre densidad e intensidad, el uso propuesto deberá ser uno contemplado en el distrito en que ubica.

6. La magnitud de la variación es la necesaria para asegurar la viabilidad del uso permitido y no es viable considerar otras alternativas para salvar el problema presentado.

b. En las Áreas de Planificación Especial, el Secretario Auxiliar de la OGPe especificará la naturaleza y extensión de las variaciones en construcción u otras variaciones y también prescribirá aquellas condiciones que a su juicio son necesarias para asegurar el cumplimiento de los criterios que se establecen en esta Sección.

c. Las variaciones autorizadas quedarán sujetas al cumplimiento de las condiciones que se establezcan y a las demás disposiciones de esta o de cualquier otra reglamentación aplicable.

d. El incumplimiento de cualquiera de dichas condiciones constituirá una violación a este Reglamento y podría constituir base suficiente para la revocación de la variación en todas sus partes.

Por otro lado, la sección 6.3.2.4 impone los criterios para autorizar una variación de uso o lotificación. En lo pertinente, expone:

No podrá autorizarse una variación en construcción, lotificación u otras, en todo o en parte, a menos:

a. Que la variación sea necesaria para la preservación y el disfrute de un derecho de propiedad y se demuestre que la variación aliviará un prejuicio claramente demostrable.

b. Que la autorización de tal variación no afectará adversamente el disfrute y valor de las pertenencias cercanas en el uso presente y para cualquier otro uso futuro permitido.

c. Que el peticionario, a su vez, está en disposición de aceptar las condiciones y requisitos adicionales a los requisitos reglamentarios que el Secretario Auxiliar de la OGPe o Municipio Autónomo con Jerarquía de la I a la III le imponga para beneficio o protección del interés público.

d. Solicitar comentarios a la Unidad de Hidrogeología de la JP en áreas propensas a inundaciones o a deslizamientos de terrenos.

e. No afecte la integridad ecológica de la Reserva Agrícola, Natural, Áreas de Planificación Especial o se ocasione peligro a los recursos naturales, históricos, culturales o agrícolas existentes.

**– C –**

Con la aprobación de la *Ley Para la Reforma del Proceso de Permisos de Puerto Rico* se precisó en nuestro ordenamiento legal y administrativo los criterios que rigen el proceso de solicitud,

evaluación, concesión y denegación de permisos por el Gobierno de Puerto Rico.[28] La precitada disposición tiene como objetivo la transformación del sistema de permisos en nuestra jurisdicción, de modo que, resulte en uno más transparente, ágil, confiable y eficiente.[29]

De ordinario, incorpora una estructura para la evaluación y otorgamiento de permisos conforme a las leyes y reglamentos aplicables, cuyo objetivo es alcanzar un balance entre el desarrollo económico, la protección de los recursos naturales y la protección del derecho al disfrute de la propiedad.[30] Igualmente, el mencionado estatuto creó la **Oficina de Gerencia de Permisos (OGPe)**, organismo gubernamental adscrito a la Junta de Planificación, entidad a la cual se le confirió jurisdicción para evaluar, conceder y/o denegar determinaciones finales y permisos relacionados al desarrollo y uso de terrenos en Puerto Rico.[31]

– III –

El señor **RIVERA HERNÁNDEZ** punteó en su *Recurso Revisión* que la DDEC y la **OGPe** erraron al ignorar la recomendación del Oficial Examinador. Además, indicó que las agencias administrativas erraron al declarar *no ha lugar* la revisión solicitada. En consecuencia, denegaron la autorización de la segregación del solar para uso público y el remanente. Para sustentar su posición, el señor **RIVERA HERNÁNDEZ** argumentó que, el uso residencial es una actividad pasiva que no ha afectado adversamente el entorno en que ubica la propiedad. Incluso, manifestó que los residentes actuales no han presentado queja u objeción alguna por más de cuatro (4) años que la propiedad lleva siendo habitada como uso residencial.

---

[28] Ley Núm. 161-2009, 23 LPRA § 9011. *Román Ortiz v. OGPe*, 203 DPR 947, 957 (2020); *Laureano v. Mun. de Bayamón*, 197 DPR 420, 433 (2017); *Horizon v. Jta. Revisora, RA Holdings*, 191 DPR 228, 236 (2014).

[29] *Exposición de Motivos*, Ley Núm. 161-2009, *supra*.

[30] *Id*.

[31] 23 LPRA § 9018. Véase, además *Miranda Correa v. Departamento de Desarrollo Económico*, 2023 TSPR 40; 211 DPR ___.

Asimismo, expuso que ambas plantas cuentan con el aval de la **OGPe**, que autorizó en el 2017, el uso residencial, por lo que, las unidades cuentan con los servicios esenciales de agua y energía eléctrica. Es menester señalar, que la propuesta de segregación presentada por el señor **RIVERA HERNÁNDEZ** es por motivo de una cesión y/o traspaso del solar a su hija, la señora Brenda Ivette Rivera Arroyo.[32]

Ante ello, fundamentó que su petición contó con la declaración del agrimensor Cándido Sepúlveda Santiago, quien realizó una mensura del solar a segregarse y concluyó que la variación era viable. De igual forma, arguyó que el Departamento de Transportación y Obras Públicas (DTOP) y la Autoridad de Carreteras dió su endoso a la petición. A su vez, el Oficial Examinador en su *Informe de Vista* recomendó la revisión y autorización de la solicitud de segregación del señor **RIVERA HERNÁNDEZ** sin que ello conlleve un cambio de calificación.

Por otro lado, la **OGPe** reaccionó a la presentación del *Recurso Revisión* expresando que el solar ubica en una zona inundable cerca del Río Cidra. Añadió que en las inmediaciones donde ubica el proyecto no existen instalaciones de alcantarillado sanitario, por lo que se dispone de las aguas a través de pozo séptico. Además, manifestó que la estructura que se pretende variar en uso, para permitir una segregación residencial, tuvo un uso comercial porque allí operaba una fábrica de hormigón. También, fundamentó que el señor **RIVERA HERNÁNDEZ** reconoció que las propiedades colindantes son de uso industrial. Igualmente, argumentó que la cabida del predio tampoco cumple con el requisito mínimo establecido para el Distrito de calificación y tiene variación en construcción.

---

[32] Véase Apéndice del *Recurso de Revisión*, pág. 26.

Al evaluar la decisión administrativa es forzoso concluir que contrario a lo alegado por el señor **RIVERA HERNÁNDEZ** en su escrito, la *Resolución* intimada el 29 de agosto de 2022 por la **OGPe** atendió la segregación interpelada en virtud de la *Solicitud de Consulta de Ubicación*. En específico expresó: "[...], no se presentó ninguna de las circunstancias necesarias para la aprobación de una segregación vía variación."[33]

La segregación según propuesta incumple con los criterios de la Sección 6.1.15.3 del *Reglamento Conjunto* en cuanto a la cabida y ancho mínimo del solar a ser segregado y la separación de la colindancia del patio derecho.

Es importante puntualizar que nuestro Tribunal Supremo ha expresado en reiteradas ocasiones que las variaciones, dado su carácter excepcional, no se favorecen y sólo deben concederse en situaciones realmente extraordinarias, cuando están claramente justificadas y procedan conforme a las leyes y reglamentos aplicables.[34]

Tras un ponderado análisis del legajo ante nuestra consideración, no hallamos indicador alguno que vislumbre que la **OGPe** hubiese actuado de manera arbitraria, ilegal o irrazonable, o si sus acciones constituyen un abuso de discreción. Contrario a ello, notamos que del expediente apelativo emana la existencia de suficientes elementos que nos llevan a concluir que la determinación administrativa está sustentada y/o avalada por *evidencia sustancial*.

No subsiste razón alguna, de hecho, o de derecho, que nos persuada a intervenir y variar la decisión recurrida. Además, del *Recurso Revisión* presentado tampoco se desprende alguna otra

---

[33] Véase Apéndice del *Recurso Revisión*, pág. 19.
[34] *Mun. de San Juan v. Bosque Real, S.E.*, 158 DPR 743 (2003); *T-JAC, Inc. v. Caguas Centrum Limited*, 148 DPR 70 (1999); *Asoc. Res. Park Side, Inc. v. J.P. I*, 139 DPR 349 (1995).

prueba que rebata la presunción de corrección que cobija el dictamen administrativo. Consecuentemente, somos del criterio de que la *Resolución* decretada por la **OGPe** fue una apropiada. Así pues, brindamos la deferencia al organismo administrativo por su expertise y nos abstenemos de intervenir con la determinación recurrida.

**– IV –**

Por los fundamentos antes expuestos, **confirmamos** la *Resolución* pronunciada el 29 de agosto de 2022 por la **Oficina de Gerencia de Permisos** (**OGPe**).

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones